STATE OF MAINE
*vs.*
ROBERT J. GILLIS

Somerset.    Opinion, April 7, 1964.

*Lloyd Stitham,*
*Clinton B. Townsend, County Attys.,* for Plaintiff.

*Casper Tevanian,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.  MARDEN, J., did not sit.

WILLIAMSON, C. J.   This case is before us on exceptions to the denial of the respondent's motion for a mistrial.   The respondent was found guilty by a jury of operating a motor vehicle in Fairfield when under the influence of intoxicating liquor.

The error charged is stated in the bill of exceptions as follows:

"Upon direct examination of Complaining Witness [a Fairfield police officer] by the County Attorney, Complaining Witness was asked:

"Q.   And what conversation did you have with [the respondent] at the police station?

"A. Well, he was told his rights and what he could do if he didn't think he was intoxicated, and he asked to use the phone and we let him use the phone.

"Because of the injection into the trial of the above conversation, Respondent's attorney moved for a mistrial on the following stated ground:

\* \* \* \* \* \* \* \* \*

"I make a motion for a mistrial on the ground that the answer as given by the previous witness, the police officer, could only come up with one meaning, and that is he had available to him, if he so desired, the medium of a blood test which he refused to take."

The pertinent portion of the statute on operating a motor vehicle when under the influence of intoxicating liquor reads:

"The failure of a person accused of this offense to have tests made to determine the weight of alcohol in his blood shall not be admissible in evidence against him." R. S., c. 22, § 150.

"The only privilege given by the statute (if in fact a statute is necessary to give it) is, that a failure to permit a blood test to be made, is not evidence against an accused." *State* v. *Demerritt,* 149 Me. 380, 386, 103 A. (2nd) 106. "[The statute] provides protection for the respondent from any prejudice which might result from his refusal or failure to have tests made." *State* v. *Munsey,* 152 Me. 198, 200, 127 A. (2nd) 79.

We are not here concerned whether the protection is based upon a constitutional privilege against self-incrimination. It is sufficient that the Legislature by statute has provided the protection. Cf. *State* v. *Banks,* 78 Me. 490, 7 A. 269.

If we set aside the evidence to which the respondent has objected, we find, first, that there was no other evidence

touching in any way upon a blood test, and second, that the evidence of the only witnesses in the case, two Fairfield police officers, fully warranted the guilty verdict.

The issue is whether there was abuse of discretion on the part of the court in not granting a mistrial. *State* v. *Sanborn,* 157 Me. 424, 173 A. (2nd) 854. The position of the respondent is that the evidence of the police officer could only mean to the jury that the respondent refused or failed to have a blood test. The State agrees, as do we, that if this were so a mistrial would be required.

The respondent is entitled to protection against an unfavorable inference from doing what he has a right to do; namely, not to have a blood test. *State* v. *Hedding* (Vt.), 172 A. (2nd) 599. The Michigan and New York cases below illustrate the situation when the refusal or failure to have a blood test is plainly indicated in evidence.

In *People* v. *Reeder* (Mich.), 121 N. W. (2nd) 840, 842, the facts were as follows:

[By State]

"Q  Did you at any time advise him of his rights as to taking a blood test, Sergeant?

"A  Yes, right after he was in the police car."

Under a statute requiring that an accused be informed of his right to a blood test and that a refusal to have the test was inadmissible, the court held that the respondent could possibly have been prejudiced by the evidence quoted and ordered a new trial.

In *People* v. *Stratton* (N. Y. App. Div.), 143 N. Y. S. (2nd) 362, affirmed 133 N. E. (2nd) 516, the court held it was reversible error to permit a physician to testify that he requested permission of the motorist to take a specimen of his blood to determine alcoholic content and that the motorist refused permission.

The State in the case at bar rejects the contention of the respondent that the answer given by the police officer could convey to a jury no other meaning than that the respondent, having been informed of his "right" to a blood test and having produced none at trial, must necessarily have refused to submit to such a test. On the contrary, the State contends that the evidence refers: first, to a bundle of "rights," that is to say, not to make a statement which could be used against him, to have an attorney, to bail, to a speedy trial, and to other unnamed rights; and second, neither by suggestion nor innuendo to the offer or refusal of a blood test. In brief, the position of the State is that the evidence with its wide sweep of meaning is withdrawn from the prohibition of the statute, and was therefore properly admissible.

In our view neither the respondent nor the State present the correct meaning of the evidence in question. The evidence did not mean only the refusal to have a blood test as respondent argued. On the other hand, the "right" or opportunity to have a blood test along with other "rights" may readily be said to be within the fair meaning of the evidence and might be so understood by a jury.

Even though it contained no direct reference to a blood test, the answer of the police officer, if seasonably objected to, would doubtless have been stricken and the jury instructed to disregard it in order to avoid even the possibility of prejudice. There was no reason for the State at this stage to introduce affirmative evidence of the fair conduct of the police or which might tend to show such conduct with reference to a blood test. No one would question the fairness of the police in informing a motorist of an opportunity to have a blood test, or of assisting him in procuring, for example, the services of a physician. Here, however, the action of the police with respect to such fair play was not under attack. *State* v. *Munsey, supra.* To permit under such circumstances the introduction of evidence which

might lead a jury to assume that the rspondent had refused to have the test might diminish if not destroy the value of his privilege of refusal. *People* v. *Stratton, supra.* In *Stratton,* however, the respondent's counsel seasonably objected to the offending evidence and promptly moved that it be stricken and the jury be instructed to disregard it. No such requests were made to the presiding justice at any stage of the instant trial. The respondent's attorney did no more than to make a subsequent motion for mistrial after completion of the examination of the witness.

The right of the respondent to a mistrial as a matter of law, however, does not necessarily follow from the receipt of the evidence of the police officer.

We are satisfied that there was corrective machinery available within the trial to remove any measurable possibility of prejudice arising from the evidence stated in the bill of exceptions. The presiding justice had the opportunity in instructing the jury to explain with care and understanding that failure or refusal to have a blood test is not admissible, and that no inference of guilt may be drawn from such failure or refusal. Since there had been no specific or direct reference to a blood test in the evidence, no delineation of the rights described by the officer to the respondent and no evidence whatever as to whether or not any blood test had ever subsequently been attempted or procured, the presiding justice had the further opportunity to instruct the jury that they were not permitted to guess, speculate or conjecture as to whether or not a blood test was ever discussed or refused or attempted or completed, and that under the circumstances no inference of any kind with respect to the taking of a blood test could properly be drawn.

Jurors and judges live in the world of the automobile. The existence of tests to determine the alcoholic content of the blood and use of such tests in "driving under the in-

fluence" cases, is common knowledge in our State. There is no reason why jurors should not understand and accept the rule that the failure or refusal to have a test is not in the case (unless in some appropriate manner raised by the respondent), and that no inference of guilt is to be drawn therefrom. The statutory rule against taking into consideration the fact that respondent does not take the stand presents a comparable problem. *State* v. *Banks, supra.*

The charge to the jury in the instant case is not contained in the record. We may therefore properly assume that the law was correctly stated to the satisfaction of the respondent. If otherwise, he would have objected.

We conclude therefore that the evidence complained of, although properly subject to a seasonable motion to strike, did not compel the granting of a mistrial. There was no abuse of discretion.

In reaching this decision we do not open the door to the State to introduce evidence pointing to refusal or failure to have a blood test for the purpose of creating an inference of guilt therefrom. *People* v. *Reeder, supra; People* v. *Stratton, supra.*

The injection of evidence for such a purpose would result in a mistrial. The court at *nisi prius* and the Law Court would act swiftly and with certainty to prevent such an improper activity on the part of the prosecution and to deter others from following a like path. See *Mapp* v. *Ohio,* 367 U. S. 643, 81 S. Ct. 1684.

The evidence complained of does not indicate an intention on the part of the State to violate the principles of fair play.

For further illustrative material see *State* v. *McCarthy* (Minn.), 104 N. W. (2nd) 673, 87 A. L. R. (2nd) 360, with anno.: Evidence—Alcohol Test—Refusal, p. 370; 44 Minn.

Law Rev. 673-704—"Chemical Testing for Intoxication"; comment upon, or admission into evidence of, refusal, by Professors M. C. Slough and Paul E. Wilson.

The entry will be

*Exceptions overruled.*