THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLARD A. BOYD, JR., Defendant-Appellant.

(No. 72-243;

Fifth District—February 28, 1974.

Robert E. Farrell, Deputy Defender, of Mt. Vernon (Richard E. Cunningham, Assistant Appellate Defender, of counsel, and William J. Becker and Robert Wells, Senior Law Students), for appellant.

Frank Bonan, State's Attorney, of McLeansboro, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Willard A. Boyd, Jr., was charged with driving while under the influence of intoxicating liquor, in the circuit court of Hamilton County. The case was tried to a jury who returned a verdict of guilty to the charge. The defendant's post-trial motion was denied and he was sentenced to nine months in the Illinois State Farm; from that conviction he has appealed.

The defendant was involved in an automobile collision with Mr. Ron Burke on South Washington Street in McLeansboro, Illinois. South Washington Street is a one-way street at the point at which the collision occurred, and the defendant was proceeding in the wrong direction. Testimony showed that the defendant had turned on to South Washington Street approximately 1½ blocks from the spot of the collision. The defendant was a life-long resident of McLeansboro and was aware that South Washington Street was one-way.

Mr. Burke testified for the State and stated that he was proceeding on the street in the left-hand lane and that he saw the car in the right-hand lane. He stated that he attempted to avoid the collision and was virtually stopped against the curb when the cars collided left side against left side. The defendant skidded a distance before the impact occurred. It had been raining on the night of the accident. After the collision, although primarily concerned about the damage to his vehicle, Burke testified that he saw a woman, a Mrs. Malone, get out of the other car followed by the defendant. Burke said that he could tell that the defendant had been drinking by the smell of beer. He also saw a box with the label "Stag" in the rear of the defendant's vehicle. Burke stated that the defendant was tired and upset and told him that he did not want the police involved. At this point in time, an acquaintance of Burke, off-duty State Trooper Tom Dodson, arrived upon the scene dressed in civilian clothes. Burke said that Mrs. Malone was bleeding from an injury to the head. He stated that Officer Dodson attempted to help Mrs. Malone but that the defendant grabbed Trooper Dodson and told him to leave her alone. Burke testified that the defendant continued such conduct after the officer had identified himself to the defendant.

Mrs. Malone and the defendant were taken to the hospital by a friend of theirs before the police arrived upon the scene.

Trooper Dodson in substance testified as did Mr. Burke adding that the defendant was staggering and that his speech was slurred as well as there being an odor of alcohol on the defendant's breath. After the on-duty police officers arrived at the scene, Trooper Dodson and another officer went to the hospital where the defendant continued to be uncooperative and abusive. Trooper Dodson stated that the defendant was greatly annoyed with himself for having driven the wrong way on the one-way street. The officer stated that in his opinion the defendant was intoxicated.

Trooper Charles Bushkill testified for the State. He reported that he investigated the accident arriving upon the scene about fifteen minutes after the accident and after the defendant and Mrs. Malone had departed to the hospital. He stated that he recovered an unopened six-pack of canned beer in the back seat of the defendant's car.

He testified that he interviewed the defendant at the sheriff's office about 1½ hours after the accident. He did not state that the defendant was intoxicated however the officer on both direct and cross-examination stated that he gave the defendant a summons for being intoxicated although the officer did not see the defendant at the scene. The nurse at the hospital testified stating that the defendant was belligerent to the police officer and was confused.

The State's final witness was Officer Ray Rhodes of the McLeansboro Police Department who also investigated the accident and interviewed the defendant at the Sheriff's office. He also stated that the defendant was disagreeable with the officers and that he was personally acquainted with the defendant and that while being interviewed concluded the defendant had been drinking and "wasn't natural at all".

The defendant took the stand on his own behalf and testified that between the hours of 6 P.M. and 9:30 P.M. on the night of the accident he had had three beers and that he and Mrs. Malone then drove to the house of Mrs. Malone's daughter and visited there for about 20 minutes and on his leaving that home he drove the wrong way onto South Washington Street. He stated that he did not realize that he was proceeding the wrong way until he saw the headlights of the approaching car, and that he swerved but failed to avoid the collision.

The defendant stated that the first time he saw Officer Dodson was when the officer grabbed him by the arm. He stated that he was excited when this then unidentified stranger grabbed him. He further stated that he told Officer Dodson to leave Mrs. Malone alone. He testified that he did not know who Officer Dodson was until another officer arrived and told him who Officer Dodson was. He stated that he was still nervous and angry while at the hospital and that he was uncooperative

at the sheriff's office, although he went voluntarily, because he was upset from the accident. He testified that he had been shaken up in the accident.

The defendant asserts that the State failed to prove him guilty beyond a reasonable doubt, and that he was prejudiced by the State's attempted introduction of his refusal to take the breathalyzer test.

A thorough examination of the record indicates that on three occasions it was indicated that the defendant had refused to take the breathalyzer test. The first time occurred when Officer Dodson was on the stand and the following occurred:

"State's Attorney: Q. And then did anything else happen with regard to taking any test?

The Court: I will sustain an objection here.

Defense Counsel: I will object to that question.

The Court: The objection is sustained unless the test was actually taken."

Next, when Officer Bushkill was testifying, the following is repeated in the record:

"State's Attorney: Q. Approximately what did you and Mr. Boyd have to do at that time?

The Witness: A. I took Mr. Boyd to the side room where the alco-tector was and asked if he would submit to an alco-tector test and he refused.

Defense Counsel: Object to that.

The Court: Yes, the objection is sustained and the jury is asked to disregard the testimony. All testimony to this so-called test is excluded and the jury is not under any circumstances to consider any part of that testimony and it is stricken from the record."

Finally when Officer Rhodes testified the following was heard:

"State's Attorney: Q. Did you observe Junior Boyd at that time?

The Witness: A. I did.

Q. Would you describe to this jury what you noticed about him?

A. Well, Junior was not cooperating very well. The trooper was questioning him, asking him if he would take the breath test and he wouldn't. * * *

Defense Counsel: Objection, Your Honor.

The Court: Sustained and the jury is instructed to disregard the question and the answer. It isn't to be considered at all."

It is also noteworthy to point out the following which occurred during the cross examination of Officer Rhodes:

Q. "You say he wasn't cooperating. Can you explain why you noticed or reached that conclusion that he wasn't cooperating?

A. Well, the trooper was asking questions * * *

Q. Did he answer the questions?

A. Part of them he would and part of them he wouldn't.

Q. What questions wouldn't he answer?

A. Well I was told not to discuss that.

Q. All right. Was there anything else he wouldn't answer?

A. Well, I don't know. I can't recall everything, all the statements that was made."

It thus can be reasonably determined that Officer Rhodes was aware that the laws of this State prevent any admission into evidence of refusal of the defendant to take the breathalyzer test.

■■ The law of this State is clear that the defendant's refusal to take the test is not admissible. (Ill. Rev. Stat., ch. 95½, par. 11—501(h); *People v. Knutson*, 17 Ill.App.2d 251, 149 N.E.2d 461.) Had the fact of the refusal been admitted into evidence, this case would have been reversed without further consideration.

However, the question in this case is a close one because of the trial court's excellent and correct reaction to the first question by the State's Attorney and the subsequent admonishments to the jury when the officers voluntarily attempted to utter the refusal in indirect reply to the State's Attorney's questions. It is clear that the trial court and the defense counsel did all that they could have done to keep the fact of the refusal from the ears of the jury; however the prosecutor persisted in repeatedly calling their attention to it. On the facts and record of this case the utterances concerning the refusal to take the test were of such magnitude, despite the efforts of the court and defense counsel, as to deny the defendant a fair trial because of the prejudicial effect of the cumulative utterances. The utterances all occurred within a relatively short time span and all were made by police officers, at the instance of the prosecutor. See *People v. Deal*, 357 Ill. 634, 192 N.E. 649; *People v. Knutson, supra;* see also *People v. Wheatley*, 5 Ill.App.3d 827, 284 N.E.2d 353.

■■ The contention of the People that the above quoted testimony did not sufficiently refer to the refusal to take the breathalyzer test is not persuasive. We do not comment on the sufficiency of the other evidence which may be quite persuasive of the defendant's guilt. We do find that the other evidence may have been sufficiently tainted by the above quoted testimony as to deny to the defendant his right to a fair trial.

The judgment is reversed, and the cause remanded for a new trial.

G. MORAN, P. J., and CREBS, J., concur.