STATE of Wisconsin, Plaintiff-Respondent,

v.

Howard Quigg ALBRIGHT, Defendant-Appellant.

Court of Appeals

*No. 80–340. Submitted on briefs July 16, 1980.—*
*Decided September 8, 1980.*
(Also reported in 298 N.W.2d 196.)

---

[12] *Wright v. Hasley*, 86 Wis.2d 572, 273 N.W.2d 319 (1979); *Krezinski v. Hay*, 77 Wis.2d 569, 253 N.W.2d 522 (1977).

664

For the defendant-appellant the cause was submitted on the briefs of *Waring R. Fincke* and *Shellow & Shellow* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *Albert Harriman,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J.  Howard Albright appeals from a judgment entering a jury verdict of guilty of operating a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.635 (1), Stats., and an order denying his motions for directed verdict and a new trial.  Albright alleges seven trial court errors including the reception of prosecution evidence of Albright's refusal to take a breathalyzer test.  While finding this admission of evidence and three other alleged errors to be proper, we reverse on the basis of the prejudicial effect of remarks by the prosecutor in opening and closing arguments and testimony by the arresting officer about weapons confiscated from Albright.

Initially the Chief Judge denied defendant's motion for a three-judge panel.  After reviewing the briefs, the Chief Judge, on his own motion, granted a collegial panel.

Albright was stopped by State Trooper Randall at approximately 1 a.m. on April 4, 1979. Randall had been passed by Albright who was driving his vehicle at 87 m.p.h.[1] Randall observed the vehicle change from the left lane to the right lane where the two right wheels struck the shoulder of the road. The trooper stopped the vehicle on an off-ramp and in a conversation with Albright, noticed a moderate odor of some type of alcoholic beverage. The officer also noticed that Albright's eyes were watery and red.

The officer testified that he asked Albright to perform some field tests. Albright recited the alphabet to the letter "K," at which point his voice trailed off and the officer could no longer understand him. Albright did not perform the balance test, despite the officer's instructions. Albright was able to walk in a heel-to-toe manner, but fell against the patrol car while turning around. Albright successfully touched the tip of his nose with both his right and left hand.[2] The officer also administered a preliminary breath test.

Upon completion of these tests, Albright was arrested and taken to the Milwaukee County Sheriff's Department where he refused to take a breathalyzer test. Before leaving the scene, the officer removed a length of chain from Albright's car. The officer stated he had removed a knife. His statement was interrupted by an objection from Albright's trial counsel, and thus, the place from which the knife was removed was not described by the officer.[3]

Albright makes four claims of error which we find to be unsubstantiated. First, Albright contends that the

---

[1] Albright admitted that he was driving his vehicle at 80 to 85 miles per hour.

[2] Albright testified that he successfully completed the alphabet, balance and heel-to-toe tests.

[3] Albright's counsel later stated in argument to the trial court that the knife was removed from Albright's pocket.

trial court erred in refusing to grant his motion for a mistrial when the prosecutor told the jury in his opening statement that Albright had been offered but had refused to take a breathalyzer test, and in permitting the prosecutor to admit into evidence Albright's refusal to take the breathalyzer test.

The arresting officer testified that he informed Albright of the implied consent law, that Albright indicated he understood, that the officer asked him to take the breathalyzer, but that Albright did not take the test. Albright objected to introduction of this evidence on the grounds of relevance.

The Wisconsin Supreme Court has held that testimony of a police officer that the defendant refused to take any chemical tests for intoxication was admissible evidence. "The [defendant] was asked to take a chemical test. It was his right to either submit to the test or refuse to do so. He chose to refuse to do so. His response to such a request is admissible evidence."[4] Our supreme court reasoned that as the results of the chemical tests are admissible pursuant to sec. 885.235, Stats., evidence of refusal to take the tests is also admissible.[5]

No Wisconsin case law, however, specifically addresses the issue of the relevancy of evidence of a refusal to submit to chemical tests for intoxication. Also, *City of Waukesha* was decided prior to the effective date of sec. 343.-305, Stats., which imposes suspension of license on refusal to submit to chemical tests for intoxication. Therefore, we address the issue as one of first impression in this state.

Jurisdictions which have considered the relevancy of refusal evidence have reached differing results. We find

---

[4] *City of Waukesha v. Godfrey,* 41 Wis.2d 401, 409, 164 N.W.2d 314, 318 (1969), *quoted in State v. Draize,* 88 Wis.2d 445, 451, 276 N.W.2d 784, 788 (1979).

[5] *City of Waukesha, supra* note 4 at 408, 164 N.W.2d at 318 [citing *Barron v. Covey,* 271 Wis. 10, 72 N.W.2d 387 (1955)].

those opinions which hold the evidence relevant and admissible to be persuasive. Several states which hold such evidence inadmissible have statutes clearly distinguishable from Wisconsin statutes.

In *People v. Sudduth*, 55 Cal. Rptr. 393, 421 P.2d 401 (1966), the arresting officer testified that Sudduth refused to take a breathalyzer test and the prosecutor commented on this evidence in argument. The jury was instructed:

Whether or not [refusal to take a breathalyzer test] shows a consciousness of guilt and the significance to be attached to such a circumstance are matters for your determination.[6]

Chief Justice Traynor, writing for an unanimous court, held that admission of test refusal evidence and the jury instructions were proper.

The supreme court of Ohio agrees:

Thus, it is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and is consciousness of guilt, especially where he is asked his reasons for such refusal and he gives no reason which would indicate that his refusal had no relation to such consciousness of guilt.[7]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[8]

A reasonable inference from refusal to take a mandatory breathalyzer test is consciousness of guilt. The person is confronted with a choice of the penalty for refusing a test, or taking a test which constitutes evidence of

---

[6] *Sudduth*, 55 Cal. Rptr. at 396 n. 5, 421 P.2d at 404 n. 5.

[7] *City of Westerville v. Cunningham*, 15 Ohio St.2d 121, 122, 239 N.E.2d 40, 41 (1968). In this case, Albright claimed only that he refused because of his belief in the inaccuracy of the test.

[8] Sec. 904.01, Stats.

his sobriety or intoxication. Perhaps the most plausible reason for refusing the test is consciousness of guilt, especially in view of the option to take an alternative test.

Before considering cases holding that refusal evidence is irrelevant, we note that use of test refusal evidence for the purpose of showing consciousness of guilt is constitutionally permissible. The only rationale for a rule prohibiting comment on a refusal would be that there is a right to refuse the test.[9] Wisconsin drivers have no constitutional right to refuse to take the breathalyzer.[10] There is no self-incrimination within the protections of the fifth amendment of the United States Constitution, or article I, sec. 8 of the Wisconsin Constitution. These provisions protect against compulsion to testify against oneself. The evidence obtained by a breathalyzer test, though incriminating, is not testimony or evidence relating to a communicative act.[11] Our supreme court has twice held that "admission of evidence of the defendant's refusal to furnish a sample of urine for a chemical test did not violate the defendant's constitutional privilege against self-incrimination [Wis. Const., art. I, sec. 8]."[12] In the context of refusal to take a chemical test to determine the amount of alcohol in a person's blood, there is no difference between the alternative chemical tests. The same rule applies to all.

Although some jurisdictions have held that refusal evidence is irrelevant, almost all have statutory schemes

[9] *City of Waukesha, supra* note 4 at 409, 164 N.W.2d at 318 [citing *Sudduth, supra* note 6, at 395, 421 P.2d at 403].

[10] *State v. Bunders,* 68 Wis.2d 129, 132, 227 N.W.2d 727, 729 (1975) [quoting *Schmerber v. California,* 384 U.S. 757, 765 (1966)].

[11] *State v. Neitzel,* 95 Wis.2d 191, 198, 289 N.W.2d 828, 832 (1980); *Bunders, supra* note 10, at 132, 227 N.W.2d at 729.

[12] *City of Waukesha, supra* note 4, at 408, 164 N.W.2d at 317 [citing *Barron, supra* note 5].

distinguishable from Wisconsin. Four of those states have adopted statutes expressly excluding evidence of refusal to take the breathalyzer test in proceedings for driving while intoxicated.[13] Nine other jurisdictions holding refusal evidence inadmissible have statutes or case law which recognize a right to refuse to take chemical tests.[14] In those states, sanctions for opting to refuse the tests would erode the constitutional or statutory right to refuse.[15] Jurisdictions which do not recognize a right to refuse breathalyzers or other chemical tests have held refusal evidence to be relevant and admissible.[16]

---

[13] *Commonwealth v. Scott,* 359 Mass. 407, 269 N.E.2d 454 (1971); *Davis v. State,* 8 Md. App. 327, 259 A.2d 567 (1969); *State v. Gillis,* 160 Me. 126, 199 A.2d 192 (1964); *People v. Boyd,* 17 Ill. App.3d 879, 309 N.E.2d 29 (1974).

[14] *City of St. Joseph v. Johnson,* 539 S.W.2d 784 (Mo. Ct. App. 1976); *State v. Oswald,* 241 N.W.2d 566 (S.D. 1976); *People v. Hayes,* 64 Mich. App. 203, 235 N.W.2d 182 (1975); *State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (1973), *cert. denied,* 419 U.S. 881 (1974); *Crawley v. State,* 219 Tenn. 707, 413 S.W.2d 370 (1967); *Stuart v. District of Columbia,* 157 A.2d 294 (Mun. Ct. App. Dist. Col. 1960); *State v. Seversen,* 75 N.W.2d 316 (N.D. 1956); *State v. Anonymous,* 6 Conn. Cir. 470, 276 A.2d 452 (1971); *State v. Parker,* 16 Wash. App. 632, 558 P.2d 1361 (1976).

[15] Chief Justice Traynor hypothesized in *Sudduth* that the disparate results as to relevancy of refusal evidence in other jurisdictions "may be ascribed to the presence of an underlying constitutional or statutory right to refuse to produce the physical evidence sought. States that recognize a right to refuse to take such tests exclude evidence of a refusal. States that recognize no right to refuse allow testimony and comment on refusal." *Sudduth, supra* note 6 at 395–96, 421 P.2d at 403–04. [Footnotes omitted.]

[16] *State v. Duke,* 378 So.2d 96 (Fla. App. 1979); *People v. Thomas,* 46 N.Y.2d 100, 385 N.E.2d 584 (Ct. App. N.Y. 1978); *State v. Tabisz,* 129 N.J. Super. 80, 322 A.2d 453 (1974); *Commonwealth v. Robinson,* 229 Pa. Super. 131, 324 A.2d 441 (1974); *State v. Miller,* 257 S.C. 213, 185 S.E.2d 359 (1971); *Vernon v. State,* 512 P.2d 814 (Okla. Crim. 1973); *Gardner v. Commonwealth,* 195 Va. 945, 81 S.E.2d 614 (1954); *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971). *Westerville, supra* note 7; *Sudduth,*

Wisconsin clearly does not recognize a right to refuse the test. "Any person who drives or operates a motor vehicle upon the public highways of this state . . . *shall be deemed to have given consent* to tests of his or her breath, blood or urine . . . ."[17] "Any such test *shall* be administered upon the request of a law enforcement officer."[18] A driver's only option upon arrest is to "recant the consent previously given."[19] Our conclusion of admissibility of evidence of chemical test refusal is consistent with the rationale of the nationwide pattern.

Albright also contends that the refusal evidence should be held inadmissible under the principle of *expressio unius est exclusio alterius.* The legislature requires the officer to inform a driver of the sanction of license revocation for six to twelve months for refusal to take chemical tests for intoxication.[20] The driver is not informed that evidence of refusal is admissible in a proceeding for driving while intoxicated. Therefore, Albright contends, that sanction was not intended by the legislature.

We disagree. The legislature established an implied consent to take a breathalyzer with very limited exceptions based on physical disability or lack of probable cause by the officer to believe the driver was operating under the influence of an intoxicant.[21] "[T]he clear policy of the [implied consent] statute is to facilitate the

*supra* note 6. *See also State v. Bock,* 80 Idaho 296, 328 P.2d 1065 (1958).

Three jurisdictions have statutes expressly admitting refusal evidence in proceedings for driving while intoxicated: Delaware, *State v. Lynch,* 274 A.2d 443 (Del. Super. 1971); Iowa, *State v. Tiernan,* 206 N.W.2d 898 (Iowa 1973); and North Carolina, *State v. Flannery,* 31 N.C. App. 617, 230 S.E.2d 603 (1976).

[17] Sec. 343.305(1), Stats. [Emphasis added.]

[18] *Id.* [Emphasis added.]

[19] *Neitzel, supra* note 11, at 201, 289 N.W.2d at 833.

[20] Sec. 343.305(3)(a), Stats.

[21] *See* sec. 343.305(8)(b), Stats.

identification of drunken drivers and their removal from the highways [and] the statute must be construed to further the legislative purpose."[22]  Evidence of refusal is relevant and constitutionally admissible.  We do not interpret the silence of a legislature which manifested a strong desire to remove drunk drivers from Wisconsin roads to mean that this relevant evidence is inadmissible in a proceeding for driving while intoxicated.

Second, Albright contends that the trial court erred in not instructing the jury that the state had the burden of proving the offense beyond a reasonable doubt and that the jury's verdict must be unanimous.  Albright reasons that a first violation of sec. 346.63(1) is a *criminal* act and the defendant must be afforded the constitutional protections afforded in a criminal proceeding.

The quantum of proof and the five-sixths verdict are set out in secs. 345.45 and 346.46, Stats.  Section 345.45 provides: "[T]he standard of proof for conviction of any person charged with violation of any traffic regulation shall be evidence that is clear, satisfactory and convincing."  "Traffic regulation" is defined by sec. 345.20 (1)(a) as "a provision of chs. 341 to 349 for which the penalty for violation is a forfeiture, or an ordinance enacted in accordance with s. 349.06."  Section 345.46 provides: "a verdict is valid if agreed to by five-sixths of the jury."  Section 939.12 provides: "[a] crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both.  Conduct punishable only by a forfeiture is not a crime."  Section 346.65(2)(a) provides: "[a]ny person violating s. 346.63(1): 1. Shall forfeit not less than $100 nor more than $500 . . . ."

Albright contends that a "first" violation of sec. 346.63 (1), Stats., defines a criminal act because there is a possibility of imprisonment even for a first violation and

---

[22] *Neitzel, supra* note 11, at 193, 289 N.W.2d at 830.

therefore the conduct is not punishable "only by a forfeiture." Imprisonment not to exceed 90 days may be imposed by the court under sec. 345.47(1)(a) if a forfeiture judgment is not paid.

In *State ex rel. Prentice v. County Court,* 70 Wis.2d 230, 234 N.W.2d 283 (1975), Prentice contended that violation of the Milwaukee Code of Ordinances for speeding was a criminal act because violation created the possibility of suspension or revocation of her driver's license or imprisonment if she did not pay the fine which could be levied. Our supreme court rejected the contention because imprisonment is not "part of the direct punishment for violation of a municipal ordinance, but an incidental means of enforcing and making effective payment of the fine."[23] Our supreme court earlier noted that imposition of imprisonment for the purpose of aiding in the collection of a fine "is analogous to most civil contempt judgments where a jail sentence is imposed as an alternative to performance of the judgment."[24] For those reasons, a "first" violation of sec. 346.63(1), Stats., is not a criminal act.

Third, Albright contends that the trial court erred in denying his motion for a new trial on the basis of newly-discovered evidence. At trial, Albright's counsel was not aware that:

(1) from approximately March of 1977 to March of 1978, Albright had been treated with Stelazine, an antipsychotic drug;

(2) in July of 1978, Albright killed his family's dogs; and

---

[23] *Prentice,* 70 Wis.2d at 242, 234 N.W.2d at 289. *See also Bayside v. Bruner,* 33 Wis.2d 533, 536, 148 N.W.2d 5, 7–8 (1967); *Milwaukee v. Horvath,* 31 Wis.2d 490, 493, 143 N.W.2d 446, 447, *cert. denied,* 385 U.S. 970 (1966); *Neenah v. Alsteen,* 30 Wis.2d 596, 601, 142 N.W.2d 232, 236 (1966).

[24] *Horvath, supra* note 23, at 494, 143 N.W.2d at 448.

(3) as a result of this killing, Albright committed himself to the Milwaukee Psychiatric Hospital for treatment.

The refusal or granting of a new trial rests in the discretion of the trial court and will not be disturbed unless showing a clear abuse of discretion.[25] A new trial on the basis of newly-discovered evidence may be granted pursuant to sec. 805.15(3), Stats., upon four necessary findings by the trial court. The first is that "[t]he evidence has come to the moving party's notice after trial . . . ."[26]

This first element has not been met by Albright. Albright certainly knew before trial of the evidence which he now claims to be newly-discovered. Only his lawyer did not know. "It may be true that counsel for the defendant was unaware of the ordinance but the test is not what counsel knows or is aware of but what his client is or should be aware of."[27]

Fourth, Albright contends that the evidence was insufficient to sustain the jury's verdict and the trial court erred in refusing to direct a verdict for Albright. The basis of this contention is that the testimonial evidence of intoxication in this case could be construed to indicate that Albright was emotionally upset.

Nonetheless, the test for determining whether a directed verdict should be granted is "whether there is any credible evidence which under a reasonable view would support a verdict contrary to that which is sought."[28] The evidence is viewed most favorably to the contention of the nonmoving party.[29] There was no specific evidence

[25] *Estate of Teasdale,* 264 Wis. 1, 7, 58 N.W.2d 404, 406 (1953).
[26] Sec. 805.15(3)(a), Stats.
[27] *Bear v. Kenosha County,* 22 Wis.2d 92, 99, 125 N.W.2d 375, 380 (1963).
[28] *Thompson v. Howe,* 77 Wis.2d 441, 448, 253 N.W.2d 59, 62 (1977).
[29] *Id.*

that Albright was an emotionally upset person. Taken in connection with the odor of alcohol, the evidence regarding Albright's performance just before and at the time of arrest sustains the jury's verdict that Albright was operating his vehicle while under the influence of an intoxicant.

Albright next claims three errors and contends that each requires reversal. We agree to the extent that the aggregate effect of the errors unfairly prejudiced Albright's case and therefore a new trial is required.

Albright alleges error in the trial court's denial of:

(1) Albright's motion for a mistrial when the prosecutor told the jury in his opening statement that Albright had been given a preliminary breath test;

(2) Albright's motion for a mistrial when the arresting officer testified about weapons he took from Albright at the time of the arrest; and

(3) permission to the defendant to cross-examine the arresting officer with regard to the impact of his drunk driving arrests upon his promotability in the Wisconsin State Patrol, and subsequent refusal to grant Albright's motion for a mistrial when the prosecutor argued in closing that Albright should not be believed because he had a stake in the outcome of the trial and the officer had none.

The reference to a preliminary breath test was improper. Section 343.305(2)(a), Stats., provides in part:

Neither the results of the preliminary breath test nor the fact that it was administered shall be admissible in any action of the proceeding in which it is material to prove that the person was under the influence of an intoxicant or a controlled substance.

The prosecutor's opening statement literally ignored the legislature's direction.

The reference to confiscated weapons was improper. The testimony created unfair prejudice which substantially outweighed any probative value. Testimony by a state trooper that he confiscated a chain and knife from

Albright's car clearly inferred impropriety or illegality on the part of Albright. While a chain or knife does not necessarily constitute a weapon, removal by an officer infers that they were in this case. The resulting prejudice to Albright is that the jury might unjustifiably conclude on the basis of this confiscation that Albright was engaged in violent and unlawful activity and therefore it would convict him on the basis of these uncharged "crimes." We view this evidence as intending the inference we draw from it because we have been provided with no other plausible explanation for offering such obviously irrelevant evidence. We note that this information was not solicited by the prosecutor, but was volunteered by the highway patrolman.

The prosecutor, in his closing argument to the jury, stated "I don't think he gets a bonus or any brownie points or any award."[30] Argument on matters not in evidence is improper.[31] No evidence was introduced regarding receipt of a bonus or "brownie points" for making arrests. The invidious nature of the argument is not apparent from its face. Prior to the commencement of the trial, the prosecutor, Assistant District Attorney Donald Jackson, had moved the trial court, *in limine*, to prohibit defendant's counsel from cross-examining the state trooper about the alleged promotional awards that result to

---

[30] The pertinent part of the argument was:

This is basically a one-on-one case, and credibility is important with respect to some of the factors that Mr. Sandfort had pointed out. The judge is going to tell you that in determining the credibility of witnesses you should take into account their interest, bias, and reasons for falsifying or altering their testimony. And I think it is pretty clear that Mr. Albright does have an interest in this case. Maybe you would assume that the officer does too; but he has told us that he has worked this job for eleven years, he has made other arrests, I am sure for operating under the influence of an intoxicant; I don't think he gets a bonus or any brownie points or any award.

[31] *Draize, supra* note 4, at 454, 276 N.W.2d at 789.

the officer from making arrests. After taking testimony from the officer (in the jury's absence), the trial court precluded such an examination. Having succeeded in preventing defendant's counsel from raising the issue and presenting evidence addressed to it, the prosecutor addressed the jury on the subject that was prohibited at his request in rebuttal argument when the defendant's counsel could not respond.

The court gave instructions in an attempt to cure the erroneous references to the preliminary breath test and confiscation of the knife and chain. Evidentiary errors and the improper remarks of counsel may be cured if "given the overall evidence of guilt and the curative effect of instructions, no prejudice is shown."[32] A motion for mistrial is directed to the discretion of the trial court.[33] Error is harmless unless the error is so prejudicial that a different result might have been reached had the error not been made.[34] A new trial should be granted where a different result would probably have been reached absent errors at trial.[35]

While the prejudice created by each error in isolation may not be sufficient to justify a new trial, we find that the cumulative effect of these errors was of substantial prejudice to Albright's case. The jury might well have reached a different verdict absent improper references that Albright failed a preliminary breath test, carried

[32] *State v. Tew*, 54 Wis.2d 361, 364, 195 N.W.2d 615, 617 (1972); *Rasmussen v. Electric Ry. and Transport Co.*, 259 Wis. 130, 134, 47 N.W.2d 730, 732, *rehearing denied, mandate modified on other grounds*, 259 Wis. 130, 49 N.W.2d 272 (1951).

[33] *Oseman v. State*, 32 Wis.2d 523, 528, 145 N.W.2d 766, 770 (1966).

[34] *Jax v. Jax*, 73 Wis.2d 572, 582, 243 N.W.2d 831, 837 (1976). *See also* secs. 903.01 and 805.18, Stats.

[35] *Thompson, supra* note 28, at 452, 253 N.W.2d at 64; *Krauth v. Quinn*, 69 Wis.2d 280, 291, 230 N.W.2d 839, 845 (1975).

weapons of violence, and gave biased testimony, as compared to testimony by an unbiased officer with no stake in the outcome. These prejudicial inferences take on added impact when considered with the equivocal evidence of Albright's intoxication, which included the *moderate* odor of alcohol and the mixed results of the balance and coordination tests. We also note that the jury voted 10–2 for conviction.

While we recognize the trial court's discretion in granting or refusing motions for a new trial in the interests of justice, scrutiny of the record indicates that the cumulative effect of the errors at trial compels us to grant Albright a new trial.

We reverse that portion of the order denying Albright's motion for a new trial. The portion of the order denying Albright's motion for a directed verdict is affirmed. Judgment is vacated.

*By the Court.*—Order affirmed in part and reversed in part; judgment vacated and cause remanded for a new trial.