STATE of Wisconsin, Plaintiff-Respondent,

v.

James BOLSTAD, Defendant-Appellant-Petitioner.

Supreme Court

*No. 84-229-CR. Argued April 30, 1985.—*
*Decided June 28, 1985.*

(Also reported in 370 N.W.2d 257.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Steven D. Phillips,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals filed September 25, 1984, which affirmed a judgment convicting James Bolstad of a criminal charge of operating a motor vehicle while under the influence of an intoxicant (OMVWI). The case was tried in the circuit court for La Crosse county, Peter G. Pappas, circuit judge. We reverse the decision of the court of appeals affirming the circuit court and remand to the circuit court for a new trial.

The record shows that Bolstad, upon being arrested upon probable cause that he was intoxicated while driving a motor vehicle, refused to allow an alcohol test to be taken. Pursuant to sec. 343.305(8), Stats., the arrest-

ing officer informed the circuit court of that refusal. Bolstad was then given a "refusal hearing," as set forth in sec. 343.305(3)(b)5. It was found that he had refused the test for reasons not permitted by the statute. After a hearing, Bolstad was found to be a person subject to "assessment and a driver safety plan." Sec. 343.-305(3)(b)6. His operator's license was suspended for failure to submit to an alcohol test under the "implied consent law."

Subsequently he was brought to trial on the intoxicated driving charge (sec. 346.63, Stats.) as a second offender and was convicted. Upon conviction he appealed to the court of appeals, claiming that he was denied due process because the trial court refused to allow him to present evidence of his reasons for refusal to permit the blood test. The court of appeals held that the trial court erred in refusing to admit such evidence, but it found the error to be harmless. It affirmed the conviction. While we agree that the trial court erred in excluding the evidence of the reasons for Bolstad's refusal to take the blood test, we do so on a different basis. Because we conclude that the trial court excluded relevant evidence which is admissible under the Wisconsin Code of Evidence, we need not reach the question of whether due process was violated by the nonadmission of the evidence.[1] We part company with the court of appeals on its conclusion that the error was harmless. Because we conclude the error was prejudicial, we reverse and remand to the trial court for a retrial of James Bolstad.

The facts show that Bolstad was backing out of a parking space at approximately 2 a.m. on August 15, 1983, in the city of La Crosse when two police officers

---

[1] We have frequently stated that we need not resolve constitutional questions if those questions can be avoided by basing our decision on clear statutory grounds. *See, State v. Dyess*, 124 Wis. 2d 525, 533, 370 N.W.2d 222 (decided this day), and cases cited therein.

saw him strike the side of an adjacent car. Police Officer Paul Weibel confronted Bolstad and asked him to perform various field sobriety tests. From these tests, Weibel concluded that Bolstad was intoxicated. He was arrested and transported to the police station. After the citation required under sec. 343.305(2)(b), Stats., was issued, Bolstad initially agreed to a breath test for blood alcohol. Almost immediately, however, Bolstad commenced gagging and choking, and he complained of stomach pains. It appeared to Officer Weibel that Bolstad was about to vomit. Under these circumstances, a breathalyzer test was not appropriate.[2]

Bolstad informed Weibel that he had been having violent stomach pains and had been vomiting blood. Bolstad agreed to Officer Weibel's suggestion that he immediately see a physician and have a blood test taken for alcohol. Weibel transported Bolstad to the St. Francis Medical Center for that purpose.

The officer testified that, just as a hospital technician was preparing to take a blood sample, Bolstad began screaming and demanded that only a doctor draw the blood sample. Despite Weibel's warning that the failure to allow the technician to draw the blood would make Bolstad's conduct a "refusal," Bolstad persisted in not allowing the sample to be taken.

Prosecution witnesses generally corroborated this sequence of events. Although the defendant testified in his own behalf, he did not offer evidence of his reasons for refusal to take the test. It is clear that an earlier ruling of the court prevented Bolstad from introducing any such evidence.

The question of whether any explanation for the refusal to take the blood test would be admitted was raised immediately after the prosecutor's opening statement. There was information available to the district attorney and to the trial judge (who had conducted the refusal

---

[2] *See, State v. Walstad,* 119 Wis. 2d 483, 351 N.W.2d 469 (1984).

hearing) that Bolstad did have stomach ulcers which required surgery a few days after his arrest. The prosecutor, out of the presence of the jury, asked that such information not be allowed in evidence as a basis for Bolstad's refusal to take the test unless the prosecution had full access to Bolstad's medical records. Whether this condition would have been agreeable to Bolstad we do not know, for the judge promptly intervened, stating that no evidence whatsoever would be admitted dealing with reasons for refusal to take the blood test. Judge Pappas said:

"There was a hearing on the refusal and it was found adverse to the defendant. . . . it's a refusal, period. There is to be no attempt to explain that or any testimony or argument as to that . . . ."

The trial judge ruled that, once "refusal" had been found in the hearing conducted for that purpose and the refusal was not because of physical inability to submit to the test—the sole statutory basis for exoneration—the matter was foreclosed from any further discussion whether the refusal was reasonable or unreasonable.

Trial counsel for Bolstad argued that for the judge to so hold would convert the judgment of the refusal hearing—which is admissible—into an irrebuttable presumption of guilt. He pointed out that, under *State v. Albright,* 98 Wis. 2d 663, 298 N.W.2d 196 (Ct. App. 1980), the refusal to take the test was a fact from which a jury could draw the inference that the refusal was based upon an awareness of guilt—that the reason why it was admissible was precisely because such an inference reasonably could be drawn. He argued that he should therefore have the right to present evidence which would show that the refusal could be explained for reasons other than the fear or consciousness of the defendant that the blood test would prove guilt. The trial judge rejected this argument. The defendant's motion for mis-

trial was denied. It is conceded that it was because of this ruling early on in the trial that defendant did not specifically attempt to explain on direct examination his reasons for refusing to take the blood test. Also, during cross-examination, when the prosecutor asked Bolstad, "Why didn't you take the test?" the trial judge interrupted the examination. When the fact was brought out that Bolstad had taken a blood test for purposes of making a blood count at the hospital, not related to the test for blood alcohol, the judge *sua sponte* pointed out that:

"[T]he defendant was taken to the hospital by the police officers and requested to submit to a blood test to determine alcohol content. You have heard the evidence relative to that, and he refused."

When defense counsel on cross-examination attempted to further pursue the question of whether Bolstad believed, or did not believe, that the small sample of blood drawn for medical purposes was for alcohol testing, the judge did not allow the question to be asked.

At the close of the jury trial, Bolstad renewed his motion for mistrial and made an offer of proof. Had the evidence been admitted, it would have tended to show that Bolstad believed that the sample drawn under the supervision of a physician, only for the purpose of a blood count, was available for determination of blood alcohol content.[3] He would have explained that he did not refuse the blood alcohol test *per se* but, in view of his condition, insisted that the drawing of blood be by a physician. The offer of proof was refused by the judge, and the motion for mistrial was again denied.

At this juncture in the trial, the judge restated his position. He said:

---

[3] The state in its brief in this court acknowledges that Bolstad's offer of proof was timely and adequate.

"[A] refusal is a refusal and at trial we do not get into any discussion as to why the defendant thinks that he didn't have to take it, or his confusion."

The trial judge then proceeded to instruct the jury in the following words as relative to the problem here:

"Testimony has been received to the effect that the defendant refused to furnish a sample of his blood for chemical analysis to determine the amount of alcohol in his blood. You should consider this evidence along with all the other evidence in the case, giving to it just such weight as you deem it is entitled to receive."

After four and one-half hours of deliberation, the jury returned a verdict of guilty. Bolstad, as a second offender, was sentenced to ten days in jail and ordered to pay a fine and costs totalling $765. The jail sentence has been stayed pending appeal.

On appeal Bolstad claimed a right to a new trial, because his due process right to present evidence was violated when the trial court refused to let him explain the reasons why he refused to give blood. The court of appeals, in analyzing the trial court proceedings, concluded the trial judge, in refusing to admit the evidence, relied on a theory of collateral estoppel. The court of appeals, citing *State ex rel. Flowers v. H&SS Dept.*, 81 Wis. 2d 376, 387, 260 N.W.2d 727 (1978), denominated this reliance as error, because relitigation of an issue is precluded in a second proceeding on an estoppel theory only " 'where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and *where the controlling facts and applicable legal rules remain unchanged* . . . .' " (Ct. App. slip opinion at page 4.)

The court of appeals pointed out that reasonableness of a refusal is not an issue in a refusal hearing—only the question of whether the test was refused "due to a *physical inability* to submit to the test due to a physical disability or disease unrelated to the use of alcohol. . . ."

Sec. 343.305(3)(b)5d, Stats. (Emphasis supplied.)[4] It emphasized, however, that the reason for a refusal was a significant issue at trial on the intoxicated driving charge, because *State v. Albright, supra,* held that the unexplained refusal to submit to an alcohol test may allow a jury to infer that the refusal arose out of a "consciousness of guilt." Ct. App. slip opinion at page 5. The court of appeals recognized that the trial court's instruction to the jury allowed the jury to draw that inference of intoxication from the undisputed determination that Bolstad had refused the test.

The court of appeals also recognized that in the instant case, Bolstad being a second offender, the intoxication charge was criminal in nature, and a different burden of proof was required. While that is undoubtedly true, we do not consider that a necessary link in the court of appeals' rationale. All that would be necessary to prove, if the fact of refusal were contested, was that beyond a reasonable doubt such finding was made. The civil judgment was conclusively probative of that fact and to that degree.

We agree with the court of appeals' analysis and its conclusion that the exclusion of the evidence was error. While the fact or finding of "refusal" could not be relitigated at the intoxication trial, the inference to be drawn from that refusal—which was not an issue at all in the refusal proceedings—becomes a matter of significant and relevant evidentiary proportions at the trial on the charge of operating a motor vehicle while under the influence of an intoxicant.

The state on this review agrees with the court of appeals' analysis and concedes that evidence of the reason for the defendant's refusal is admissible if the evidence is relevant and the exclusion of relevant evidence is error. For reasons, however, that we find unclear, the

---

[4] *City of Prairie du Chien v. Evans,* 100 Wis. 2d 358, 359 n 2, 302 N.W.2d 61 (Ct App 1981).

state contends any explanation the defendant might have here is not relevant.

The state basically accepts all of the controlling arguments propounded by Bolstad or relied upon by the court of appeals. The state in its brief states its position as follows:

"[A] finding of unjustified refusal following a hearing under Wis. Stats. sec. 343.305(8) should not always estop[5] a criminal defendant charged under Wis. Stats. sec. 343.63(1) from explaining at the criminal trial the reason for the refusal."

The only argument even posited by the state is that, in respect to evidence explaining a refusal to take an alcohol test, a defendant does not have the absolute right to present evidence deemed exculpatory unless it is relevant. Obviously, this correct proposition is not subject to dispute. In view of our established rules of evidence, the proposition is so well recognized that to append it as a special rule in OMVWI cases in respect to explaining "refusal" is superfluous.

The defendant has viewed the trial court's denial of his right to explain his refusal as a denial of his due process right to testify in his own behalf. The state has apparently concluded that the defendant is asserting a constitutional right to produce irrelevant evidence. We do not so view the defendant's argument. It is beyond peradventure that a defendant has no right—constitutional or otherwise—to produce evidence that is not relevant. *See, State v. Droste,* 115 Wis. 2d 48, 339 N.W.2d 578 (1983). The question here is relevancy.

We need not look to the constitutional dimensions of the arguments of either the state or the defendant. While the state has conceded that the suppression of relevant

---

[5] We are puzzled at the state's use of the verb, "estop," when it has in the same brief pointed out that the doctrine of estoppel is not applicable. We can only assume that "estop" was used inadvertently or in a nontechnical sense.

evidence would be a denial of due process, we need only to determine whether the trial court erred under the Wisconsin rules of evidence in failing to admit the reasons or evidence proffered by Bolstad to explain his refusal.

The controlling rules are secs. 904.01 and 904.02, Stats.[6] Under these rules, if the evidence proffered by Bolstad makes a fact of consequence at issue more probable or less probable, that evidence is admissible.

Here the basic fact in issue is whether Bolstad was intoxicated at the time of his arrest. The state may submit the relevant and, hence, admissible evidence that Bolstad refused the test for blood alcohol content. That refusal evidence is relevant, because it makes more probable the crucial fact of intoxication, because, as *State v. Albright* at 668 said, "A reasonable inference from refusal to take a mandatory [blood alcohol] test is consciousness of guilt." Thus, the inference to be drawn is closely akin to an admission against interest. The inference—if one is in fact drawn—that a defendant was conscious of his guilt of intoxication tends to make more probable a fact that is of consequence in this criminal action, the fact of intoxication. Unrebutted, it could be deemed, inferentially at least, proof of intoxication.

The corollary of that rule is that any evidence that tends to rebut or diminish the force of that permissible inference is also relevant, for it tends to make less prob-

---

[6] Sections 904.01 and 904.02, Stats., provide:

"**904.01 Definition of 'relevant evidence'.** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"**904.02 Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

able the fact of intoxication—a fact of consequence in this action, and therefore, equally admissible. Thus, evidence that would tend to show that the refusal was for reasons unrelated to a consciousness of guilt or the fear that the test would reveal the intoxication, tends to abrogate, or at least diminish, the reasonableness of the inference to be drawn from an unexplained refusal to take the alcohol test.

In the instant case, the explanation made in the offer of proof—that he wanted a physician and not a technician to drawn the blood—tends to rebut the inference that he feared the test would reveal his intoxication,[7] i.e., he feared the tester, not the test. Because the only reason why, under *State v. Albright,* the fact of refusal is admissible is the possible inference of guilt consciousness, any evidence that tends to show refusal for some other reason is relevant and, hence, admissible.

It was error to have excluded that evidence after what the state has conceded to be a timely and adequate offer of proof. We so conclude, because the decision of the trial court was contrary to the Wisconsin rules of evidence permitting the admission of relevant evidence. We do not find it necessary to discuss whether the disregard of the rules of evidence resulted in the deprivation of a constitutional right of due process. A serious evidentiary error undoubtedly occurred by the exclusion of the evidence in disregard of secs. (rules) 904.01 and 904.02, Stats.

The court of appeals found this error harmless. Because in *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985), decided this day, we concluded that it was appropriate to employ the same rule in determining wheth-

---

[7] Whether the assertions are credible is for the jury. The record reveals that Bolstad was never given an opportunity to state why he wished to have blood drawn by a doctor and not by a technician.

er error was harmless or prejudicial irrespective of whether the error was of constitutional proportions or not, we employ that standard here to measure the effect of the error in this case.

In the instant case, it is apparent that, by the court's erroneous ruling, Bolstad was denied his statutory right to attack the inference of intoxication resulting from the state's proof that he had refused to take the test. As counsel pointed out at trial, the exclusion of the testimony would have the effect of making what was only intended to be a permissible inference an irrebuttable presumption of guilt. Defense counsel repeatedly made the argument—at the time of the trial judge's original decision to exclude reasons for the refusal; at the time of the post-verdict-renewed motion for mistrial; on appeal; and again upon this review. He argued that:

"By allowing the prosecution to introduce evidence of Bolstad's refusal, and then instructing the jury that this evidence could be considered in determining Bolstad's guilt, the court permitted the jury to infer guilt from the refusal itself. By precluding the defendant from rebutting this inference, either by evidence or by argument, the court essentially created an irrebuttable presumption of guilt . . . ."

While we have no occasion on this appeal to scrutinize the trial court's instruction in respect to the weight to be given the fact of refusal,[8] we agree that the failure to afford an opportunity to the defendant to rebut the inference constitutes error affecting the substantial rights of the defendant. As *Albright* makes clear in permitting the admission of refusal evidence, the reason the fact of refusal is admitted in evidence to create an inference of guilt is because such evidence is relevant in that it pertains to a "fact that is of consequence to the determination of the action." Sec. 904.01, Stats. There-

---

[8] The instruction based on the theory of *State v. Albright* is not questioned by the defendant.

fore, the exclusion of rebuttal evidence under these circumstances results in a substantial error, for it lets stand unchallenged evidence that is of consequence to an issue —in this case intoxication, the only disputed issue in the case. The error was not trivial, but substantial. Sec. 805.18(2), Stats.,[9] as we pointed out in *State v. Dyess,* 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985), is a statutory test of harmless error and is applicable to both civil and criminal proceedings. That statute provides that:

"No judgment shall be reversed . . . unless in the opinion of the court to which application is made, after an examination of the entire action . . . it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse . . . ."

Clearly, the exclusion of the evidence conceded by the state to be error affected the substantial rights of Bolstad. The ruling prevented the defendant from producing relevant evidence that would tend to negate an inference of guilt. The ruling deprived the defendant of the statutory right to present exonerating evidence. The error was in respect to a substantial right. Under sec. 805.18, Stats., under one interpretation, the fact of that error alone would be sufficient to reverse and remand for a new trial.

[9] Section 805.18, Stats., provides:

"**805.18 Mistakes and omissions; harmless error.** (1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.

"(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."

We are, however, enjoined by the statute to make the determination of whether the error affected the substantial rights of a party only "after an examination of the entire action or proceeding."

In *Dyess, supra,* at pp. 542–543, we accepted the statement of *Novitzke v. State,* 92 Wis. 2d 302, 284 N.W.2d 904 (1979) :

> " '[T]he harmless error test would require reviewing courts to set aside the verdict and judgment unless sure that the error did not influence the jury or had but only slight effect.' "

In the same case, we stated the same test in a more expansive manner to embrace constitutional as well as nonconstitutional errors :

> "We conclude that, in view of the gradual merger of this court's collective thinking in respect to harmless versus prejudicial error, whether of omission or commission, whether of constitutional proportions or not, the test should be whether there is a reasonable possibility that the error contributed to the conviction. If it did, reversal and a new trial must result." *Dyess, supra,* p. 543.

We also concluded that the test of *Strickland v. Washington,* —— US ——, 104 S. Ct. 2052 (1984), was instructive. We concluded that *Strickland,* although not binding upon the court in *Dyess,* was supportive of this court's statement of the harmless error rule stated in *Dyess.* *Dyess,* as well as *Strickland,* makes clear that the harmless error rule was not an arcane incantation that, if applied literally, would always provide the touchstone to determine what is harmless error or prejudicial error. *Strickland* gave as its ultimate determinative basis the appellate court's appraisal of whether the error was one that "undermine[s] confidence in the outcome." 104 S. Ct. at 2068.

Thus, as both *Strickland* and *Dyess* demonstrate, the determination of whether error is harmful requires that

the focus be upon the effect of the error and that the emphasis is upon a methodology rather than upon an exact formula. Clearly because in a criminal case the proof must be beyond a reasonable doubt, where there is error, if there is a reasonable possibility that the error contributed to the result, reversal should follow.

The egregious nature of the error has been recited in this opinion. Nevertheless, as counsel for the defendant concedes, absent the error (assuming that the jury had the opportunity to disbelieve the reasons proffered for the refusal, an opportunity the jury never had) there was not such a lack of evidence of guilt that we would be compelled to set aside the verdict as a matter of law because there was no evidence to support a finding of guilty.

The state produced evidence that Bolstad failed the field sobriety tests. He backed into another parked car, his eyes were bloodshot, and his gait was unsteady. Nevertheless, all of this testimony was disputed. Bolstad stated he had only the customary "two beers" on the day in question, the last consumed more than twelve hours before his arrest. He was with his daughter during the whole time after 5 p.m. on the day of the arrest. She testified he had nothing to drink and was sober. No witnesses were produced to show that Bolstad had anything to drink. Moreover, there was little evidence to dispute the claim that he was ill at the time of the arrest. There was evidence that only a few days later he underwent emergency surgery for stomach ulcers. The fact of his hospitalization has not been questioned. The court is not persuaded that the case was a close one because it took almost five hours for the jury to reach a verdict. There may be various reasons for delay in coming to even an easy and indisputable verdict. Nevertheless, the jury, on the basis of the evidence, could have believed Bolstad and his witnesses and acquitted him. Had they been given the opportunity, they could have believed his explana-

tion for refusing to submit to a blood test. The court of appeals, however, usurped the function of the jury when it chose to conclude that Bolstad's proffered testimony would not have been believed. The court of appeals stated the credibility of the excluded testimony was arguable. The statement is, no doubt, correct, but it was relevant admissible evidence whose credibility was to be denominated as arguable or credible or incredible only by the jury, not the judge or appellate court.[10]

In view of the jury instructions that the unrebutted evidence of consciousness of guilt could be considered by the jury, the several *sua sponte* interruptions by the judge, which served to emphasize the irrebuttable nature of the inferences to be drawn by the defendant's refusal to take the blood test, and the express direction to the jury that it could not consider that the defendant could have believed that a sample taken for a blood count satisfied his obligation to give blood, it is apparent that the error was not isolated, but pervasive. The entire tenor of the court's relation to the refusal evidence was to emphasize the inference of guilt to be drawn from the refusal and to highlight the irrelevance of any explanations the defendant might have for his refusal. The jury was denied the opportunity of testing the defendant's

[10] The state would have us establish an elaborate pretrial mechanism whereby in a hearing the trial judge would determine the "plausibility" of proffered reasons for the refusal. We see this as an additional and unnecessary step in the already overly protracted process of trying intoxicated drivers. It also would usurp the function of the jury unless the judge could find the offered testimony incredible as a matter of law. It appears to us that the ruling should be made on the basis of admissibility, *i.e.*, in this case relevancy, in the same manner that admissibility is always decided and, if thought appropriate or necessary, by an offer of proof. We see no error in the method used by Judge Pappas, only with his conclusion that, as a matter of law, reason-for-refusal evidence was precluded by the earlier proceeding. Plausibility is not a permissible issue for the judge to determine on the question of the admission of refusal evidence.

credibility on this crucial issue. The court of appeals perceived that error, but it minimized that error by concluding that the evidence arguably would have been incredible. Yet it did not attempt to do what in some cases would be within its clear prerogative—to hold that the offered testimony was incredible as a matter of law. Rather, it inappropriately assumed the prerogative of the jury and determined credibility.

In light of the fact that the defendant was denied a substantial right—the right to present evidence of substantial consequence that tended to make less probable an otherwise appropriate inference of consciousness of guilt—and in light of the fact that the evidence that was admitted was contradictory, we conclude, using the test of *Dyess*, that the error was not harmless.

Here, absent the error, the jury could have had a reasonable doubt about Bolstad's guilt. His defense was that he was not intoxicated, and he submitted proof to that effect. This defense was weakened—almost vitiated—by the trial judge's instructions and *sua sponte* interruptions that reinforced the erroneous legal position that Bolstad's proffered evidence was irrelevant.

A review of the record demonstrates that this court cannot be sure that the error did not influence the jury or had only a slight effect on the outcome. There is a possibility, which we find to be reasonable under the circumstances, that the error contributed to the conviction. The reasonable possibility that the error contributed to the outcome undermines our confidence in the verdict.

We conclude that the decision of the court of appeals must be reversed and the cause remanded to the circuit court for a new trial.

*By the Court.*—Decision reversed and cause remanded to the circuit court.