BENJAMIN F. BRIGGS, and another, *vs.* JEROME B. HUNTON.

Androscoggin. Opinion January 16, 1895.

*Warranty. Stallion. Registration of Animals. R. S., c. 38, § 61.*

There is no implied warranty, in a contract for the service of a stallion for breeding, that the animal is free from disease that may be transmitted to offspring.

Where the use of property is private, and not deleterious to public health or welfare, so as to come within proper police regulation, its use may be enjoyed free from legislative control.

*Held;* That the price of service for a stallion, when the animal has not been registered as required by R. S., c. 38, § 61, may be recovered when the animal has not been advertised or held out for public use.

ON EXCEPTIONS.

This was an action on the case upon an account annexed, the principal item of which was for services of the plaintiffs' stallion, "Sir William," to the defendant's mare in 1889, when said mare was bred to said stallion. The evidence tended to show that

the plaintiffs were then engaged in the business of keeping and owning other stallions for breeding purposes; that defendant attempted to breed his mare to another of the plaintiffs' stallions at an agreed price of seventy-five dollars, but was unsuccessful; that these plaintiffs offered defendant the service of Sir William, then two years old, then kept and owned by plaintiffs for breeding purposes only as appears by the evidence, for the sum of fifty dollars, and that thereupon defendant's mare was bred to said Sir William; that there was no express contract as to the condition of said stallion, and no express condition to said contract of service, except that the mare should prove to be in foal; that said mare did prove in foal and dropped a colt the following season; that said colt, the defendant claimed, was dropped weak, sick and diseased, and lived only four days.

The defendant claimed that the evidence tended to show that said stallion at the time of said service was afflicted with an incipient disease, which afterwards developed into fits (this, however, was denied by the plaintiffs), and thereupon the defendant claimed that there was an implied warranty in the contract of service that said stallion was not then diseased, and that if the jury should find that said stallion was so diseased, it would be a defense to said item.

But the presiding justice ruled otherwise, and that even if said stallion was at the time of said contract and service afflicted with any incipient disease, unknown to the plaintiffs, it would be no defense to said item.

The plaintiffs admitted that prior to said contract and service, they had filed no certificate with the register of deeds in the county where said stallion was owned or kept, stating the name, color, age and size of the same together with the pedigree of said stallion as fully as attainable, and the name of the person by whom he was bred, as provided in section 61, chapter 38, of the Revised Statutes; but the plaintiffs claimed and offered evidence tending to show that prior to said contract and service, they had not advertised the services of said stallion by any written or printed notices. All the other items in the account annexed were admitted.

Thereupon the defendant requested the presiding justice to rule that the plaintiffs could not in this action recover compensation for said service, namely, said item of fifty dollars. But the presiding justice declined so to rule, but ruled, *pro forma*, that the plaintiffs could recover for said service, notwithstanding their failure so to file such certificate, and directed the jury, there being no other defense offered, to return a verdict for the plaintiffs for the full amount of their account annexed, including said item, and which they accordingly did.

To all these rulings and the directions so to return a verdict, the defendant took exceptions.

*George C. Wing*, for plaintiffs.

*A. R. Savage and H. W. Oakes*, for defendant.

We have not been able to find a case exactly parallel with this, and therefore the analogies to be drawn from decided cases are not perfect.

It is not the case of a sale ; it is more nearly akin to a case of contract to manufacture, or perhaps a sale of goods manufactured by the owner.

There is in such cases an implied understanding that the articles manufactured or sold for a specific purpose will answer the purpose. See Note to 24 Am. Rep. 104.

No analogy from the doctrine of *caveat emptor* can apply. The defect was not discoverable ; the disease was latent. See note to *Chandelor* v. *Lopus*, 1 Smith's Leading Cases, 318.

The trouble, not being in its nature discernible, and the undoubted purpose being to obtain a colt that was at least healthy or free from hereditary disease, it must be beyond question in such a case that there was an implied understanding, stipulation or warranty that the stallion was in that respect fit for breeding purposes. See note to *Chandelor* v. *Lopus*, *supra* ; *Warner* v. *Arctic Ice Co.* 74 Maine, 475 ; *Downing* v. *Dearborn*, 77 Maine, 457 ; *Thoms* v. *Dingley*, 70 Maine, 100.

II. The second question is whether failure to file a certificate of pedigree, etc., as required by R. S., chap. 38, section 61, is a defense.

The plaintiffs claim (a) that the stallion was not "kept" for breeding purposes, and (b) they "had not advertised the services of said stallion by any written or printed notices."

(a) As to the first point, the case shows that the plaintiffs "were then engaged in the business of keeping and owning other stallions for breeding purposes." The defendant unsucessfully tried to breed his mare to another stallion of plaintiffs at an agreed price. Plaintiffs then "offered" the service of Sir William, the stallion in question, which was accepted.

It is immaterial whether Sir William had been used for customers' mares before that. There always has to be a first time. They used him this time in their business of "keeping stallions," etc., and as a substitute for another. They contracted his services for a price, which they are seeking to recover. He was a part of their stud, and apparently used as such when occasion required. The purpose of the statute applied to him just as much as to any other stallion.

The fact that he was ungelded shows why he was "kept," and being so kept the statute should be applied to him.

(b) In answer to plaintiffs' second claim, we say that the statute is explicit: "Whoever neglects to make and file such certificate shall recover no compensation," whether he has advertised or not.

The advertising is not a condition to the forfeiture of compensation.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

HASKELL, J.  Two questions are presented:

I.  Does a contract for the service of a stallion for breeding, contain an implied warranty that the animal is free from disease that may be transmitted to offspring? The element of deceit, that might result from the concealment of disease known to the owner of the animal, must be eliminated from the consideration of this question, as that element might be cause for a remedy differing from that sought here. It does not pertain to this case.

In the sale of chattels by the manufacturer, for specific uses, an implied warranty arises that the article is fit for the use intended.  *Downing* v. *Dearborn*, 77 Maine, 457.

In the sale of chattels, without express warranty of quality, and without fraud, *caveat emptor* applies, and no warranty is implied by law.  *Kingsbury* v. *Taylor*, 29 Maine, 508 ; *Winsor* v. *Lombard*, 18 Pick. 57 ; *Mixer* v. *Coburn*, 11 Met. 559 ; *French* v. *Vining*, 102 Mass. 132 ; *Howard* v. *Emerson*, 110 Mass. 320.  If, however, the sale be by description, without opportunity for inspection, the article must not only meet the description, but be salable or marketable, of the kind described.  Said Lord Ellenborough : " The purchaser cannot be supposed to buy goods to lay them on the dunghill."  *Gardiner* v. *Gray*, 4 Camp. 144 ; *Warner* v. *Arctic Ice Co.* 74 Maine, 475.

In the sale of provisions, other than to the consumer, it seems settled that the rule of *caveat emptor* applies.  *Howard* v. *Emerson, supra* ; *Giroux* v. *Stedman*, 145 Mass. 439 ; *Moses* v. *Mead*, 1 Denio, 378 ; *Humphries* v. *Comline*, 8 Blackf. 516 ; *Ryder* v. *Neitge*, 21 Minn. 70.  But some authorities except sales of provisions to the consumer for domestic use from the rule.  *Van Bracklin* v. *Fonda*, 12 Johns. 468 ; *Hoover* v. *Peters*, 18 Mich. 51 ; *Sinclair* v. *Hathaway*, 57 Mich. 60 ; *Copas* v. *A. A. Provision Co.* 73 Mich. 541.  Other cases are sometimes cited to the same point, but in these the defect was known, as it was in the leading case, *Van Bracklin* v. *Fonda, supra.*

In the case at bar, the owner sold the services of his stallion for breeding purposes.  Had he known the stallion to have been diseased, and concealed the fact, it would have been fraud.  Not knowing this, upon what ground, or from what principle of law, can warranty be implied?  Why not apply the rule of *caveat emptor*?  The purchaser had the same field of inquiry open to him as the seller.

In *Kingsbury* v. *Taylor*, 29 Maine, 508, winter rye was innocently sold for seed spring-rye, whereby the purchaser lost his crop, and the court held no deceit, and in effect say there was no warranty implied.

In *Winsor* v. *Lombard*, 18 Pick. 57, mackerel were sold as No. 1 and No. 2 ; held, no warranty that they were not No. 3 in quality.

In *Howard* v. *Emerson*, 110 Mass. 320, a cow was sold by a farmer to retail butchers, and it was held that there was no implied warranty that she was fit for food.

In *Giroux* v. *Stedman*, 145 Mass. 439, a farmer killed a hog and sold the flesh, knowing that the purchaser intended to eat it, and the court said there was no warranty that it was fit for food.

If a warranty is to be implied in the case at bar, it must arise from the principle of sale for specific use. There was no sale of a chattel, but the sale of the use of a chattel. No authority has been cited that any implied warranty arises from the contract of letting that the thing let is fit for the use intended where the selection is made by the lessee.

In *Deming* v. *Foster*, 42 N. H. 165, a particular yoke of oxen were sold to work on a farm, and the court held there was no implied warranty of their fitness. The court illustrates by quoting from *Keates* v. *Cadogan*, 10 C. B. 591, 2 E. L. & E. 320, and shows the difference between : " Sell me a horse fit to carry me," and " Sell me that gray horse to ride." In the case at bar, the plaintiff did not sell the service of a stallion fit to beget offspring ; but the service of " Sir William." He knew no reason why he was not fit for the purpose, and the law does not imply a warranty that he was.

II.   Can the price of service for a stallion be recovered when the animal has not been registered, as required by R. S., c. 38, § 61 ? That statute provides : " The owner or keeper of any stallion for breeding purposes, before advertising, by written or printed notices, the service thereof, shall file a certificate [describing the animal]. Whoever neglects to make and file such certificate shall recover no compensation for said services," and is subjected to the penalty for knowingly filing a false one.

The statute manifestly applies to animals kept for public use, because being applied to the use of the public, it is proper enough to require a truthful description and pedigree to be

stated on a public record. The use being dedicated to the public, the public may by law regulate it so far as necessary for their protection. *State* v. *Edwards*, 86 Maine, 102. But where the use of property is private, and not deleterious to public health or welfare, so as to come within proper police regulation, the use may be enjoyed free from legislative control.

In this case, the owner of the stallion had not advertised him, had not held him out for public use, and therefore might enjoy the fruits of his service in such way as he might choose to do. He might breed his own mares to him. He might breed his neighbors' mares to him, or to the mares of a stranger, without violating any law. Contracts for such service would be valid and binding upon the makers of them.

*Exceptions overruled.*