State, Respondent, vs. Withrow, Appellant.

*May 20—June 21, 1938.*

For the appellant there was a brief by *Kopp & Brunck-horst* of Platteville, and oral argument by *Arthur W. Kopp*.

For the respondent there was a brief by the *Attorney General, R. M. Orchard,* assistant attorney general, and *Richard W. Orton,* district attorney of Grant county, and oral argument by *Mr. Orchard* and *Mr. J. E. Messerschmidt,* assistant attorney general.

FOWLER, J. The defendant pleaded not guilty to an information charging that on June 15, 1935, at Grant county, he "did use for public service a grade stallion for breeding purposes without first having the same registered with the department of agriculture and markets, contrary to sec. 95.01 (2), Stats. 1935." Trial was to the court without a jury. The court adjudged the defendant guilty.

The use for public service, as that term is defined in the statute, of a grade stallion without procuring a certificate of registration is admitted. The point of the case is that it was impossible for the defendant to procure a certificate of regis-

tration for a grade stallion. Sec. 95.10, Stats., provides that "no license certificate shall be issued for any grade . . . stallion after January 1, 1928." There was a provision that certificates for grade stallions in force on December 31, 1927, might be renewed annually thereafter, but the defendant's stallion was not foaled until long subsequent to that date. The defendant had applied for a certificate of registration for his stallion and his application had been denied. The defense is, in substance, that the section of the statute above quoted is unconstitutional because prohibitory as distinguished from regulatory.

It is conceded by the defendant that the use of stallions for public service may be regulated by statute. Certain requirements as to soundness are established by sec. 95.02, Stats. An applicant for registration must have his stallion "thoroughly examined by a legally qualified veterinarian," whose affidavit of the stallion's soundness must accompany the application. The defendant complied with this requirement. Certain diseases and defects disqualify a stallion for registration. Defendant's stallion is free from all these. Certain requirements relating to advertising are established by sec. 95.07, Stats., but the defendant violated none of these provisions. The defendant's stallion was a proper subject for registration in every respect, except that he is not purebred.

The defendant also concedes that things may be prohibited by statute that offend against public morals, public health, public safety, or public welfare. This being true, the converse is also true, that things that do not offend in some one or more of these respects cannot be prohibited. It is manifest that the use of stallions for public service does not offend or in any way affect public morals or health. Such use of vicious sires might perhaps be considered as affecting public safety, but there is no claim or intimation that the defend-

ant's stallion is vicious, and the statutes do not purport to prohibit such use of vicious purebred stallions. So the only possible basis for prohibition of the use of grade stallions is that such use somehow affects the public welfare.

No cases are called to our attention defining public welfare. The term is perhaps not capable of precise or all-inclusive definition. It is said in Freund, Police Power, p. 54, § 59, that "the correct constitutional principle seems to be that a business serving valuable economic or social purposes may not be entirely prohibited." It is said in Cooley, Const. Lim. (7th ed.) p. 889, that "the general rule undoubtedly is, that any person is at liberty to pursue any lawful calling, and to do so in his own way, not encroaching on the rights of others." We do not perceive how the defendant's use of his stallion "encroached" in any way "upon the rights of others." The business of maintaining stallions for public use manifestly "serves an economic purpose." The general rule is stated in 12 C. J. p. 921, § 431, as follows: It is "beyond the police power to prohibit persons from engaging in the common business occupations or employments that are innocent and lawful in themselves, and that do not require the exercise of any special skill; and as to such occupations, the scope of the police power is confined to the enactment of regulations to promote the public health, safety, and welfare. A business or occupation that is innocent in itself and has no effect necessarily injurious on the public welfare may not be suppressed or prohibited." It may be said of the instant statute that it does not prohibit the defendant from pursuing the business of keeping a stallion for public service, provided he pursues it with a purebred instead of a grade horse. But this only brings us up against the rule above referred to stated by Judge Cooley to the effect that a business not in any way intrinsically harmful may be pursued in any way or by any means that does not harmfully

affect the public. It would seem *a priori* that the defendant's use of his stallion as he did use it cannot be prohibited.

The basis of the state's claim that the prohibition of the use of grade stallions for public service is justified seems to be that the use of purebred stallions tends to improve and the use of grade stallions to deteriorate the quality of the general stock of horses. Some of the state's witnesses expressed opinion to that effect. But the witnesses so expressing themselves on cross-examination admitted that grade stallions are as likely to transmit their individual qualities of health, soundness, conformation, and disposition as purebreds, and purebreds are as likely as grades to possess undesirable qualities and as likely to transmit them. All state's witnesses admitted that the progeny of grade sires are as good work horses, as long-lived, and work as long as progeny of purebreds. It was undisputed that progeny of purebreds are as subject to disease as those of grades; that as many good colts are bred from grades as from purebreds; that "lots of scrub colts come out of purebred sires;" and that a "mean colt" is as likely to come from a purebred as from a grade sire. Upon the whole evidence relating to the subject we are unable to perceive any sufficient basis for finding either that the general stock of horses will be bettered by limiting sires to purebreds or that the general stock will be deteriorated by permitting the use of grades. Nor does the record disclose that the trial judge made any such finding or entertained any such notion.

The main basis of justification disclosed by the evidence for prohibiting the use of grade sires for public service seems to be the opinion of state's witnesses that the progeny of purebred sires bring better prices than those of grades. This was disputed by witnesses for the defense, who claimed that sale price is governed by the individual animal regardless of whether its sire was a purebred or grade. But assuming it

to be the fact, this alone would not justify prohibiting the use of grade stallions for public service. If it would, then if it were thought that the progeny of purebred Belgian sires brought better prices than those of Percherons and Clydesdales the use of purebred sires of the latter breeds could be prohibited by statute. It seems manifest that this could not lawfully be done.

The lack of constitutional basis for prohibiting the use of grade sires merely because they are grades seems manifest from consideration of the individual stallion here involved. His fitness for breeding purposes from any viewpoint seems clear from his description as shown by the undisputed testimony of the witnesses. The sire of the horse was a purebred and his dam a grade Percheron. The horse is absolutely sound in wind and limb, weighs about two thousand pounds, and is described by farmers that had used him for service as a "wonderful animal," "best seen in years," a "No. 1 stallion," of good type, good bone, good draft conformation, and good disposition. His colts are uniformly "first class" and satisfactory to their owners.

From the above it appears that we are of opinion that the prohibitive feature of the statute involved is unconstitutional. We are necessarily compelled to base our ruling on the broad general principle first stated. No case involving the prohibition of the use of grade sires for public service and none bearing directly upon the point is called to our attention. Here, if ever, "a horse case" would be helpful, but counsel through diligent search have found none. *State v. McGuire,* 183 Iowa, 927, 167 N. W. 592, is cited by the state. This case is not in point. The indictment charged the defendant with offering for public service "as registered" a stallion without having him enrolled by the secretary of the state board of agriculture, and without having procured from the secretary a certificate of such enrollment.

The statutes there involved did not forbid use of a *grade* stallion, but expressly permitted it on registration as prescribed by statute, sec. 2341–*f*, Suppl. Code, Iowa, 1913. The statute under which the defendant was prosecuted, sec. 2341—*q*, imposed a penalty for using a stallion represented as registered without having him registered. *Briggs v. Hunton,* 87 Me. 145, 32 Atl. 794, 796, cited by defendant, has some remote bearing. It was a suit to recover the fee for service of a stallion. The defense was that the stallion was used in violation of the statute. The statute provided for procuring a certificate of breeding, etc., before *advertising* the service of a stallion for breeding purposes. The defendant did not advertise the service of his stallion, and therefore did not violate the statute. Not having advertised, the defendant had not held out the stallion for public use, and the use made was therefore held private. The opinion states that "where use of property is private, and not deleterious to public health or welfare, so as to come within proper police regulation, the use may be enjoyed free from legislative control." The use here involved, although public under the definition of our statute, was "private" in the sense of the word as used in the above quotation. If such use as was there made might be enjoyed, free from legislative control, with equal reason may the use here made be enjoyed free from legislative prohibition.

The above is deemed to cover the case sufficiently and the other matters urged in defense need not be considered.

*By the Court.*—The judgment of the circuit court is reversed with directions to enter judgment of dismissal.