CITY OF MILWAUKEE, Respondent, v. HORVATH, Appellant.

*June 6—July 1, 1966.*

---

[13] (1959), 8 Wis. (2d) 620, 626, 99 N. W. (2d) 726.

492

For the appellant there was a brief and oral argument by *Dorothy E. Horvath* of Whitefish Bay, *pro se.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Patrick J. Madden,* assistant city attorney, and oral argument by *William J. Lukacevich,* assistant city attorney.

WILKIE, J. The single issue presented on this appeal is whether Milwaukee Ordinance, sec. 101–321,[2] which permits imprisonment upon failure to pay a fine, is constitutional.

It is well established that actions for violations of municipal ordinances, such as those in the instant case, are civil proceedings.[3] Appellant contends that the disputed ordinance is repugnant to both sec. 1, art. XIII

---

[2] Enacted pursuant to sec. 66.12 (1) (c), Stats.

[3] Sec. 66.12 (1) (a), Stats., provides: "An action for violation of a city or village ordinance, resolution or bylaw is a civil action." See also: *Neenah v. Alsteen* (1966), 30 Wis. (2d) 596, 600, 142 N. W. (2d) 232; *Milwaukee v. Antczak* (1964), 24 Wis. (2d) 480, 481, 129 N. W. (2d) 125; *Milwaukee v. Bub* (1962), 18 Wis. (2d) 216, 218, 118 N. W. (2d) 123; *State ex rel. Keefe v. Schmiege* (1947), 251 Wis. 79, 86, 28 N. W. (2d) 345.

(Thirteenth amendment) of the United States constitution,[4] and sec. 2, art. I, of the Wisconsin constitution,[5] both of which forbid involuntary servitude except as a punishment for crime.

This court ruled in *State ex rel. Keefe v. Schmiege* that direct imprisonment for punishment of a municipal ordinance infraction would violate sec. 2, art. I of the Wisconsin constitution,[6] but that imprisonment to enforce the collection of a fine would not.[7]

Appellant argues that the refusal to pay a fine resulting from an ordinance breach is no more a crime than the violation of the ordinance itself; that, if it violates the constitution for a municipality to provide for direct imprisonment for the violation of an ordinance, it also violates the constitution for a municipality to provide for indirect imprisonment for failure to pay a fine levied as a result of that infraction.

In *Schmiege* this court clearly ruled otherwise by stating:

"As an adjunct to punishment by fine, 'not as a part of the punishment, strictly speaking, but as a means of enforcing payment of the fine and costs—that is, of making the element of punishment effective' (*Starry v. State,* 115 Wis. 50, 53, 90 N. W. 1014), the legislature may authorize the imprisonment of defendants in such civil action in case of failure to pay fines imposed. This

[4] "Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

[5] "Slavery prohibited. Section 2. There shall be neither slavery, nor involuntary servitude in this state, otherwise than for the punishment of crime, whereof the party shall have been duly convicted."

[6] *Supra,* footnote 3, at page 85. See also *Waukesha v. Stathas* (1949), 255 Wis. 76, 79, 37 N. W. (2d) 846, and *State ex rel. McStroul v. Lucas* (1947), 251 Wis. 285, 291, 29 N. W. (2d) 73.

[7] *State ex rel. Keefe v. Schmiege, supra,* footnote 3, at page 85. See also *Milwaukee v. Johnson* (1927), 192 Wis. 585, 592, 213 N. W. 335.

process of collecting fines is analogous to the body execution in the case of torts, is of ancient origin, antedates the constitution and is of undoubted validity." [8]

Where imprisonment is for the purpose of aiding in the collection of a fine that has been legally levied, it is not, as appellant urges, imprisonment "for a crime." It makes "effective the imposition of a fine." The defendant, by paying the fine, avoids any imprisonment. It is analogous to most civil contempt judgments where a jail sentence is imposed as an alternative to performance under the judgment. In such case, the contemnor has the keys to his cell and by doing what the court orders he can escape being jailed. [9]

Appellant might argue that she was indigent and unable to pay the fine; that for the poor the fine with the follow-up imprisonment on failure to pay amounts to imprisonment for an ordinance violation; that thus, the city ends up doing indirectly what it could not do directly—bring about imprisonment for the violation of an ordinance.

To adopt this line of reasoning would be to vitiate all fines of ordinance violators who could be considered "indigent," to allow such offenders to violate the city's ordinances with impunity. We reaffirm *Schmiege* that where a fine is levied and imprisonment provided on failure to pay the fine, such imprisonment does not violate either sec. 2, art. I, of the Wisconsin constitution, or sec. 1, art. XIII, of the United States constitution.

[8] *Supra,* footnote 3, at page 85. This rationale was also followed in the case of *Milwaukee v. Johnson, supra,* footnote 7, at page 592: "But very clearly the court had the power as a means of enforcing the payment of the fine or forfeiture imposed to direct that the defendant be imprisoned until payment is made, but not to exceed a fixed maximum period of time. This imprisonment is in the nature of an execution against the body of the offender rather than the imposition of imprisonment as a punishment for the violation of the ordinance."

[9] *Wisconsin Employment Relations Board v. Mews* (1965), 29 Wis. (2d) 44, 138 N. W. (2d) 147.

Even assuming that the jailing of appellant for non-payment of her fines amounts to "punishment for crime" we must reject appellant's contention that this amounts to "involuntary servitude" within the meaning of either the federal or state constitutions. The immediate object of the Thirteenth amendment was to abolish slavery.[10] The term "involuntary servitude" contained in the amendment is understood to have a broader meaning than slavery[11] and has been interpreted by the United States supreme court to mean "a condition of enforced compulsory service of one to another"[12] or the "state of voluntary or compulsory subjection to a master."[13] More specifically, the evils intended to be eliminated were "those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."[14]

Thus it is clear that the involuntary-servitude proviso of the Thirteenth amendment is not directed to the present facts. Mere imprisonment, without the imposition of labor, is not servitude.[15]

This court has not yet been called upon to interpret the meaning of "involuntary servitude" in sec. 2, art. I, of the Wisconsin constitution. However, since both the federal and Wisconsin provisions were patterned after

---

[10] See discussion in *Slaughter-House Cases* (1872), 83 U. S. (16 Wall.) 36, 68, 21 L. Ed. 394.

[11] *Bailey v. Alabama* (1911), 219 U. S. 219, 241, 31 Sup. Ct. 145, 55 L. Ed. 191; *Slaughter-House Cases, supra,* footnote 10, at page 69.

[12] *Hodges v. United States* (1906), 203 U. S. 1, 16, 27 Sup. Ct. 6, 51 L. Ed. 65.

[13] Id. at page 17.

[14] *Butler v. Perry* (1916), 240 U. S. 328, 332, 36 Sup. Ct. 258, 60 L. Ed. 672. For an excellent discussion of the meaning of "involuntary servitude," see 48 Am. Jur., Slavery, Involuntary Servitude, and Peonage, p. 467, sec. 4.

[15] 48 Am. Jur., Slavery, Involuntary Servitude, and Peonage, pp. 467–470, sec. 4; 16 C. J. S., Constitutional Law, p. 995, sec. 203 (1).

the Northwest Ordinance of 1787,[16] the decisions of the United States supreme court interpreting the Thirteenth amendment should also apply with equal force and effect to sec. 2, art. I.[17]

*By the Court.*—Judgment affirmed.

---

[16] *Butler v. Perry, supra,* footnote 14, at page 332; *Bailey v. Alabama, supra,* footnote 11, at page 240. See also *United States v. Shackney* (2d Cir. 1964), 333 Fed. (2d) 475; Jackson, Some of the Sources of the Declaration of Rights in the Constitution of Wisconsin, Reports of Wisconsin Bar Association (1906), vol. 7, 115, 120.

[17] And this should be the case despite the fact that sec. 2, art. I, appeared in the original Wisconsin constitution of 1848, while the Thirteenth amendment was not adopted until after the Civil War.