STATE of Wisconsin, Plaintiff-Respondent,

v.

William M. BROWNSON, Defendant-Appellant.†

Court of Appeals

*No. 90–0417–CR. Submitted on briefs May 30, 1990.—Decided July 17, 1990.*

(Also reported in 459 N.W.2d 877.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert Andrew Adman* of Appleton.

On behalf of the respondent, the cause was submitted on the brief of *Lori A. Eidemanis,* assistant district attorney.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    William Brownson appeals a judgment of conviction stemming from a breached contract to build a garage.[1] Brownson was found guilty of violating Wis. Adm. Code sec. Ag 110.05(2)(d), failure to include the start and finish dates in a written home improvement contract; Ag 110.02(6)(m), failure to furnish proper lien waivers; and Ag 110.05(9), failure to comply with the terms of a home improvement contract. Brownson raises a number of issues in connection with this appeal. He contends that ch. Ag 110 is vague and overbroad, that the evidence adduced at trial was, as a matter of law, insufficient to support the verdict and that criminalizing breach of contract under sec. Ag 110.05(9) violates the thirteenth amendment's prohibition of involuntary servitude. We reject Brownson's first two arguments, but agree that sec. Ag 110.05(9) is unconstitutional and that Brownson's conviction on that charge must be reversed.

James Brown asked Brownson to build a garage after meeting him at a home and garden show. Later, Brownson made a written offer to build a specified garage for $5,525, which he signed as general manager of Professional Workers Construction (PWC). Brown accepted the offer and paid 20% down. Brown made two further advances in the amounts of $3,315 and $826.80, paid by check to PWC and endorsed by Brownson. The garage was never completed. One materialman was not

---

[1]Upon the chief judge's order dated July 12, 1990, this has been issued as a three-judge opinion pursuant to sec. 809.41(3), Stats.

paid by Brownson/PWC and filed a notice of intent to file a lien.

Brownson testified that his wife, Janet, did the scheduling and that her son, Patrick Ryan, made the disbursements. He contended that he was out of state when Brown's acceptance arrived by mail and that Ryan was the site supervisor and disbursing agent on the Brown contract. Janet testified that although she was the titular head of PWC, Brownson exercised real control. Brown and his wife, Nancy, testified that they dealt only with Brownson.

Brownson was convicted of three violations of ch. Ag 110. On post-trial motions, Brownson's attorney raised many of the issues that are the subject of this appeal. The trial court denied the motions, and Brownson appeals.

■

It appears from the record that Brownson failed to raise his major constitutional attacks on ch. Ag. 110 until his motion for a new trial. When the defendant does not raise a constitutional issue at or before trial, review by this court is discretionary. *State v. Kaster,* 148 Wis. 2d 789, 804–05, 436 N.W.2d 891, 897–98 (Ct. App. 1989); *see also Vigil v. State,* 76 Wis. 2d 133, 145, 250 N.W.2d 378, 384 (1977). The state does not raise the timeliness of Brownson's challenges as an issue and, because the factual record is well developed and because the issues Brownson raises are meritorious and deserving of judicial discussion, this court will examine his challenges.

■

The constitutionality of administrative rules may be challenged in criminal proceedings. Section 227.40(2)(b), Stats. However, there is a question as to whether the attorney general must be notified. Section 806.04(11),

Stats., provides in part: "If a statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard." Although sec. 806.04 concerns declaratory judgments, our supreme court has held that the notification provision applies to nondeclaratory judgments as well. *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 116-17, 280 N.W.2d 757, 764-65 (1979); *see also Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 202, 405 N.W.2d 732, 737 (Ct. App. 1987). Administrative rules, however, are not statutes, ordinances or franchises. In view of the language in secs. 227.40 and 806.04, and the lack of any case law requiring notification in challenges to rules, we decline to hold that notification of the attorney general was necessary.

Brownson first attacks ch. Ag 110's definition of seller as overbroad: " 'Seller' means a person engaged in the business of making or selling home improvements and includes corporations, partnerships, associations and any other form of business organization or entity, and their officers, representatives, agents and employes." Wis. Adm. Code sec. Ag 110.01(4) (July 1981).

We disagree. An administrative rule is construed the same as a statute. *State v. Bucheger,* 149 Wis. 2d 502, 506-07, 440 N.W.2d 366, 368 (Ct. App. 1989). An overbroad statute "is one that is designed to burden or punish activities which are not constitutionally protected, but the statute sweeps too broadly and includes within its compass activities protected by the First Amendment." *City of Madison v. Baumann,* 155 Wis. 2d 388 at 393-394, 455 N.W.2d 647 (Ct. App. 1990) (quoting *State v. Princess Cinema,* 96 Wis. 2d 646, 655, 292 N.W.2d 807, 812 (1980)). Brownson concedes that he has no standing to raise an overbreadth objection to the rule if

it is found that such standing is limited to first amendment claims. Instead, he argues that cases such as *State v. Starks,* 51 Wis. 2d 256, 186 N.W.2d 245 (1971), and *State v. Withrow,* 228 Wis. 404, 280 N.W. 364 (1938), implicitly created a broader overbreadth standing in Wisconsin courts than is available in federal courts. Such an interpretation is belied by the plain reading of *Baumann,* our court's most recent discussion of the overbreadth doctrine.[2] Because Brownson raises no claims of first amendment infringement, the overbreadth doctrine is not available to him, and he cannot rely on purely hypothetical situations in seeking to overturn his conviction. His overbreadth challenge must fail. *See Stepniewski v. Gagnon,* 732 F.2d 567, 572 (7th Cir. 1984) (ch. Ag 110 does not infringe on first amendment or any other constitutional protections).

Brownson also argues that his due process rights were violated because the state was not required to prove the element of intent. Intent is an element of a crime only if it is required by statute. *State v. Danforth,* 125 Wis. 2d 293, 295, 371 N.W.2d 411, 413 (Ct. App. 1985), *aff'd,* 129 Wis. 2d 187, 385 N.W.2d 125 (1986). While it has been stated that "wholly passive" conduct cannot form the basis for criminal liability, *see Stepniewski v. Gagnon,* 732 F.2d at 571, Brownson's conduct, by his own admission, was not wholly passive. Brownson acknowledges that he made the estimate, signed the contract and signed the checks.

Most importantly, from this court's perspective, is that our supreme court has traversed this ground before. In *State v. Stepniewski,* 105 Wis. 2d 261, 314 N.W.2d 98 (1982), the court upheld the conviction of two home

---

[2]In accord with *Baumann, see also City of Milwaukee v. K.F.,* 145 Wis. 2d 24, 39–40, 426 N.W.2d 329, 336 (1989).

improvement contractors who had omitted starting and completion dates from their contracts and failed to comply with the dates when they included them. The court found the lack of an intent element was not violative of due process and stated:

> It is reasonable and necessary for the legislative body to protect the innocent who need [home improvement] services by placing a burden of regularity, evenhandedness and legal guidelines on the purveyors of the services . . . Good, honest entrepreneurs recognize it and are not hurt by the law holding them strictly liable in a punitive statute which requires minimum standards of behavior. It is not offensive to require starting dates and completion dates to be stated in a contract. It would appear offensive only to persons not wishing to be held to any semblance of accountability.

*Id.* at 277, 314 N.W.2d at 105.

■

There is no compelling difference between this case and *State v. Stepniewski*. Consequently, Brownson's due process rights were not violated by the absence of an intent element. Because no intent element was required and because Brownson was a "seller" under sec. Ag 110.01(4), we reject his fact-based defenses arguing that he was not responsible for the violations upon which he was convicted. Therefore, we affirm Brownson's convictions under secs. Ag 110.05(2)(d) and 110.02(6)(m).

■

Finally, we address Brownson's argument that sec. Ag 110.05(9) violates the thirteenth amendment of the United States Constitution as well as art. 1, sec. 2, of the Wisconsin Constitution.[3] This issue was not addressed

---

[3]Section Ag 110.05(9) (July 1981) provides simply: "The

in *State v. Stepniewski.* Both the thirteenth amendment and the Wisconsin Constitution bar "involuntary servitude" except as punishment for a crime, and Wisconsin courts have read our own constitution to be coextensive with the thirteenth amendment law developed by the United States Supreme Court. *City of Milwaukee v. Horvath,* 31 Wis. 2d 490, 495-96, 143 N.W.2d 446, 448-49 (1966).

Brownson argues that criminalizing the breach of a labor contract, in the absence of any finding of fraudulent intent, constitutes involuntary servitude since an individual is forced to complete the work or risk criminal penalties. The thirteenth amendment prohibits involuntary servitude enforced by the use or threatened use of physical or legal coercion. *United States v. Kozminski,* 108 S.Ct. 2751, 2760-61 (1988). A criminal penalty certainly qualifies as legal coercion.

The United States Supreme Court has issued a line of cases interpreting the thirteenth amendment that bar criminal penalties for breach of a labor contract. We adopt the reasoning of New York's highest court, its court of appeals, which examined these United States Supreme Court cases and struck down a similar rule. *See People v. Lavender,* 398 N.E.2d 530 (N.Y. 1979).

The *Lavender* court reviewed four cases: *Pollock v. Williams,* 322 U.S. 4 (1944); *Taylor v. Georgia,* 315 U.S. 25 (1942); *United States v. Reynolds,* 235 U.S. 133 (1914); and *Bailey v. Alabama,* 219 U.S. 219 (1911). All four cases struck down statutes criminalizing breach of a labor contract. The Supreme Court found that these types of statutes violated the thirteenth amendment even when they allegedly sought to penalize only the

---

seller shall comply with the terms and conditions of oral or written contracts entered into by the seller."

presumed initial fraud, *Taylor*, 315 U.S. at 30, or when the breach of a labor contract merely established prima facie evidence of intent to defraud. *Pollock*, 322 U.S. at 15. The Court found that breach of a labor contract alone could only subject the defendants to judgment for breach, and not to criminal penalties. *Id.* at 15; *Taylor*, 315 U.S. at 29–30; *Reynolds*, 235 U.S. at 150; *Bailey*, 219 U.S. at 235.

The Court summed up this rule in *Pollock:*

> "It is true that in each opinion dealing with statutes of this type this Court has expressly recognized the right of the state to punish fraud, even in matters of this kind, by statutes which do not either in form or in operation lend themselves to sheltering the practice of peonage. Deceit is not put beyond the power of the state because the cheat is a laborer nor because the device for swindling is an agreement to labor. But when the state undertakes to deal with this specialized form of fraud, it must respect the constitutional and statutory command that it may not make failure to labor in discharge of a debt any part of a crime. It may not directly or indirectly command involuntary servitude, even if it was voluntarily contracted for."

*Lavender*, 398 N.E.2d at 532–33 (quoting *Pollock*, 322 U.S. at 24). The New York Court of Appeals, holding that the challenged rule was directed at the breach of a labor contract rather than the initial fraudulent conduct, struck it down.

■

In the absence of any indicia of fraud or misrepresentation, the state may not criminalize breach of a labor contract.[4] The state argues that this holding will

---

[4]Similarly, the state may not compel an individual to labor against his or her will as part of the remedy of specific perform-

leave it without effective remedies to protect the public against unscrupulous practices by builders. It further points to language in the Supreme Court opinions, particularly *Pollock,* castigating southern states for continuing to enact these types of laws in the face of Supreme Court precedent and pointing out that the statutes' real purpose was to force poor black laborers into peonage. In this case, the state identifies the significant differences in the underlying fact situations and argues that because there is no such improper intent behind sec. Ag 110.05(9), it is saved from constitutional challenge.

We are not persuaded. There are only limited exceptions to the rule expressed by the thirteenth amendment and art. I, sec. 2, of the Wisconsin Constitution. One is when the state compels its citizens to perform civic duties such as military service or jury duty. *Kozminski,* 108 S.Ct. at 2760. The second is in "exceptional cases" such as those granting parents certain powers over their children or laws preventing sailors from deserting. *Id.* The rule at issue here falls in neither of these categories. Because sec. Ag 110.05(9), as currently drafted, violates the thirteenth amendment, we do not address Brownson's argument that it is also unconstitutionally vague.

Because Brownson was sentenced separately on each charge, we see no compelling reason for a remand to resentence. Therefore, we remand the case and order that Brownson's nine-month jail sentence and $70 fine for violating sec. Ag 110.05(9) be vacated. The trial court's award of restitution and the remainder of its sentence are not altered.

---

ance. *See, e.g., Beverly Glen Music v. Warner Communications,* 224 Cal.Rptr. 260, 261, 178 Cal.App.3d 1142, 1145 (1986).

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.