COURT OF APPEALS
DECISION
DATED AND FILED

July 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1046**

STATE OF WISCONSIN

Cir. Ct. No. 2023FO356

IN COURT OF APPEALS
DISTRICT IV

VILLAGE OF REESEVILLE,

PLAINTIFF-RESPONDENT,

V.

FREDERICK J. PROUGH,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dodge County: KRISTINE A. SNOW, Judge. *Affirmed*.

¶1      NASHOLD, J.[1]  This appeal concerns a judgment against Frederick Prough for violating a municipal ordinance prohibiting noxious weeds and the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(g) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

dismissal on summary judgment of Prough's counterclaims alleging constitutional violations under 42 U.S.C. § 1983. For the reasons set forth below, I affirm.

## BACKGROUND

¶2 Prough owns a property located on the corner of North Main Street and Jackson Street in the Village of Reeseville. Adjacent to his property is a terrace located between the sidewalk and Jackson Street that is owned by the Village.[2] After Prough refused to mow the weeds on the terrace, allowing weeds to grow up to six feet in height, Prough received a municipal citation for "Public Nuisance – Noxious Weeds," which cited VILLAGE OF REESEVILLE, WIS., ORD. ("VRO") § 334-3(F) (sometimes referred to in this opinion as "the noxious weeds ordinance").[3] VRO § 334-3(F) includes "noxious weeds" on a list of prohibited "[p]ublic nuisances affecting health." *See also* VRO § 334-1 (prohibiting "public nuisances"); VRO § 334-8(B). (creating penalties for violation of "any provision of this chapter"). Pursuant to VRO § 399-38 (sometimes referred to in this opinion as "the terrace ordinance"), owners of land abutting a terrace are required to maintain the terrace, including keeping it free and clear from noxious weeds.

¶3 In response to the citation, Prough filed an "Answer and Counterclaims." Pertinent here, in his answer, Prough alleged that the terrace was

---

[2] The parties do not dispute that the terrace is owned by either the Village, the county, or the state. I agree with the Village that it is immaterial for purposes of this appeal which governmental entity owned the terrace, and for ease of reading, this opinion refers to the terrace as being owned by the Village, which is consistent with what the circuit court concluded in its order granting summary judgment in favor of the Village.

[3] All references to the Village of Reeseville ordinances are to the version incorporating revisions up to May 7, 2024. *See* VILLAGE OF REESEVILLE, WIS., ORDS. (https://ecode 360.com/RE4189).

"overgrown with noxious weeds as a direct result of the Village doing construction, destroying the grass that was present there, and then replacing the tended grass area with an unremediated area consisting of rocks and clay, which then became infested with noxious weeds." Prough stated that after the Village did not comply with his request to remediate the condition of the terrace, he "refused to mow" the terrace. Prough also requested that the citation be dismissed because, according to Prough, the citation did not comply with the requirements of WIS. STAT. § 66.0113 as to what information it must include.

¶4    Prough's counterclaims alleged constitutional violations under 42 U.S.C. § 1983. Pertinent here, Prough alleged that, as applied to him, the terrace ordinance requiring landowners to maintain portions of the public right-of-way adjacent to their property violated the Thirteenth Amendment's prohibition of slavery and involuntary servitude. Prough also alleged a violation of his First Amendment rights because, according to Prough, the citation was issued in retaliation after he complained about the Village's "substandard work" during its construction project and "demand[ed] that it be set right."[4]

¶5    The circuit court elected to address the municipal citation first and to defer ruling on Prough's constitutional counterclaims. At a bench trial on the municipal citation, the Village called three witnesses: Prough, his neighbor, and Dodge County Sheriff's Office Deputy Martin Keberlein.

¶6    Prough testified as follows. Prior to the events leading up to the citation, he had maintained the terrace for over 20 years by cutting the grass.

---

[4] Prough's counterclaims also alleged violations of the Fifth and Fourteenth Amendments; however, he does not renew those arguments on appeal.

However, after road construction by the Village disturbed the terrace, Prough stopped mowing the weeds that began to grow there in order to make a "statement" regarding his belief that the Village's actions had resulted in weeds, rather than grass, growing on most of the terrace. Prough continued to mow a small strip on the terrace that he believed to be grass, but would not mow the rest of the terrace that became overgrown with weeds. Photographs of the property and terrace were introduced into evidence at the trial, and included the two photographs below:



Prough was told by a Village employee from the Department of Public Works that he should cut the weeds, but Prough refused to do so. Deputy Keberlein also told

Prough to cut the weeds, but Prough did not comply and was subsequently issued a citation.

¶7      Prough's neighbor testified that she lived on the same street on which Prough's property was located and that at some point she, her husband, and a new neighbor across the street mowed down the weeds on the terrace because the weeds were a "health and safety issue."  She testified that "when you pulled up to the stop sign, you couldn't clearly see going down the road" and that she "feared for people that were walking their dogs at night."

¶8      Deputy Keberlein testified as follows.  Keberlein contacted Prough to inform him that the Village wanted Prough to comply with his obligation to maintain the terrace by cutting the weeds growing on the terrace.  When Prough did not comply, Keberlein issued Prough a citation for "Public Nuisance – Noxious Weeds," citing VRO § 334-3(F).  Keberlein believed the weeds were noxious because of their height of up to six feet or more, the pollen that they emitted, and the obstructed view of traffic that they created.

¶9      In closing argument, Prough's counsel argued that enforcement of the terrace ordinance violated Prough's constitutional rights under the Thirteenth Amendment because the Village could not "force a citizen to go out and work for free in the public right of way" and could not "force a landowner who owns abutting property to essentially abate the nuisance caused by the [V]illage itself." Prough also argued that the citation was legally insufficient because it did not contain the information required by WIS. STAT. § 66.0113(1)(b).

¶10     The circuit court determined that Prough violated the noxious weeds ordinance and that the citation complied with WIS. STAT. § 66.0113(1)(b).

5

Following briefing from the parties and oral argument, the court also granted the Village's motion for summary judgment and dismissed Prough's counterclaims.

## DISCUSSION

¶11    Prough raises three arguments on appeal.  First, he argues that the terrace ordinance violates the Thirteenth Amendment's prohibition against slavery and involuntary servitude and that the circuit court therefore erred in finding him guilty of the ordinance violation and in dismissing his Thirteenth Amendment counterclaim.  Second, he contends that the court erred in finding him guilty of the ordinance violation because the citation he received did not comply with the requirements of WIS. STAT. § 66.0113(1)(b).  Third, Prough argues that the court erred in dismissing his First Amendment counterclaim because the Village's citation was issued in retaliation after Prough complained about the Village's substandard construction work that affected the terrace.  For the reasons that follow, I reject each of Prough's arguments and affirm.

### I.  Standard of Review

¶12    "The constitutionality of an ordinance is … a question of law, which this court reviews de novo."  *Town of Rhine v. Bizzell,* 2008 WI 76, ¶13, 311 Wis. 2d 1, 751 N.W.2d 780.  This case also requires the interpretation of a statutory provision, which we similarly review de novo.  *Clean Wis., Inc. v. DNR*, 2021 WI 71, ¶15, 398 Wis. 2d 386, 961 N.W.2d 346.  Finally, Prough challenges the circuit court's order dismissing his counterclaims on summary judgment, which I also review de novo, using the same methodology as the circuit court.  *Bauer v. Wisconsin Energy Corp.*, 2022 WI 11, ¶11, 400 Wis. 2d 592, 970 N.W.2d 243.  Summary judgment is appropriate when the summary judgment materials "show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

### II. Thirteenth Amendment

¶13 As stated, Prough was cited for noxious weeds growing on the terrace adjacent to his property. Responsibility for maintaining the terrace is governed by the terrace ordinance, VRO § 399-38. VRO 399-38(C) states that the "owner of land in the Village whose land abuts a terrace is required to maintain … the terrace directly abutting such land as provided … elsewhere in this Code." In addition, VRO § 399-38(B) states that "[a]ll that part of the terrace not covered by a sidewalk shall be kept free and clear of all noxious weeds and … shall be maintained as a lawn."

¶14 Prough argues that, as applied to here, VRO § 399-38 violates the Thirteenth Amendment's prohibition on slavery and involuntary servitude because it requires him to maintain, for no compensation, a terrace belonging to the Village. As a result, he argues, the circuit court erred in finding him guilty of violating the noxious weeds ordinance and also erred in dismissing on summary judgment his counterclaim that alleged a violation of the Thirteenth Amendment.

¶15 "Ordinances and statutes normally are the beneficiaries of a presumption of constitutionality which the challenger must refute." *County of Kenosha v. C & S Mgmt., Inc.*, 223 Wis. 2d 373, 383, 588 N.W.2d 236 (1999). As the party challenging the constitutionality of the ordinance as applied to him, Prough bears the burden of establishing that the ordinance, as applied, is unconstitutional beyond a reasonable doubt. *See State v. Smith*, 2010 WI 16, ¶9, 323 Wis. 2d 377, 780 N.W.2d 90 (applying this standard to statutes). For the reasons that follow, I conclude that, based on the undisputed facts, Prough has

failed to show that the terrace ordinance, as applied to him, violates the Thirteenth Amendment. As a result, Prough's arguments based on the Thirteenth Amendment provide no basis to disturb the circuit court's judgment convicting him of violating the noxious weeds ordinance or the court's dismissal on summary judgment of Prough's Thirteenth Amendment counterclaim.

¶16 The Thirteenth Amendment to the United States Constitution declares that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII. "The primary purpose of the Amendment was to abolish the institution of African slavery as it had extended in the United States at the time of the Civil War." *United States v. Kozminski*, 487 U.S. 931, 942 (1988). However, "the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Id.* (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)); *see also City of Milwaukee v. Horvath*, 31 Wis. 2d 490, 495, 143 N.W.2d 446 (1966) (quoting same language from *Butler*).

¶17 "[T]he term 'involuntary servitude' necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Kozminski*, 487 U.S. at 952. However, "not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment." *Id.* at 943. For example, "[b]y its terms the Amendment excludes involuntary servitude imposed as legal punishment for a crime." *Id.* In addition, the United States Supreme Court "has recognized that the

prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties." *Id.* at 943-44.

¶18     Prough appears to rely on the involuntary servitude language of the Thirteenth Amendment.  However, he provides no authority from this or any other jurisdiction in which a court has held that this type of obligation—requiring a citizen to mow a small strip of publicly owned terrace adjacent to that citizen's property so as to prevent the growth of noxious weeds—is a "form[] of compulsory labor akin to African slavery" under the Thirteenth Amendment.  In fact, the only relevant authority provided by either party or that this court has independently uncovered explicitly rejects Prough's position.

¶19     For example, in *Rowe v. City of Elyria*, 38 Fed. Appx. 277 (6th Cir. 2002), a plaintiff challenged a city's mowing ordinance that required the owner or occupant of a property to ensure that grass and weeds do not exceed a height of twelve inches.  *Id.* at 280.  The plaintiff argued that the ordinance forcing him to mow the grass in the "tree lawn" belonging to the city or to pay a fine subjected him to involuntary servitude in violation of the Thirteenth Amendment.  *Id.* at 280, 283.  Relying in part on the "akin to African slavery" language quoted above, *id.* at 283, the Court of Appeals for the Sixth Circuit rejected this argument, stating:

> While we have not located any cases discussing the imposition of charges for failing to maintain property, we conclude that even if the tree lawn is owned by the City[,] enforcement of the mowing ordinance does not involve the kind of compulsion that would constitute involuntary servitude under the Thirteenth Amendment.

*Id.*  Similarly, in *City of Overland v. Wade*, 85 S.W.3d 70 (Mo. Ct. App. 2002), a Missouri court of appeals rejected the defendant's Thirteenth Amendment

challenge to a municipal ordinance that required him to mow the grassy public right-of-way abutting his property located between the sidewalk and the street. *Id.* at 71. The court concluded that the ordinance is "a valid exercise of the municipality's police power, which is substantially and rationally related to the health, safety, peace, comfort, and general welfare of the inhabitants of the City." *Id.* at 73. The court further concluded that "the desire to maintain the beauty and aesthetics of a city's neighborhoods are proper concerns to be addressed through the police powers of the municipality." *Id.* These cases are persuasive, particularly given Prough's failure to provide supporting case law to the contrary, and support the conclusion that enforcement of the terrace ordinance does not violate the Thirteenth Amendment.

¶20 Prough relies on *State v. Brownson*, 157 Wis. 2d 404, 459 N.W.2d 877 (Ct. App. 1990). In *Brownson*, a defendant who failed to finish building a garage that he had contracted to build was charged under an administrative code provision for failure to comply with the terms of a home improvement contract. *Id.* at 406. Pertinent here, the defendant challenged the provision on Thirteenth Amendment grounds, arguing that "criminalizing the breach of a labor contract, in the absence of any finding of fraudulent intent, constitutes involuntary servitude since an individual is forced to complete the work or risk criminal penalties." *Id.* at 411. The *Brownson* court agreed with the defendant for two primary reasons. First, the court observed that "[t]he United States Supreme Court has issued a line of cases interpreting the [T]hirteenth [A]mendment that bar criminal penalties for breach of a labor contract." *Id.* Notably, unlike *Brownson*, the instant case does not involve a breach of contract, much less criminal penalties for such a breach, and therefore the "line of cases" from the Supreme Court is inapplicable here.

¶21 Second, relying on ***Kozminski***, the ***Brownson*** court noted that there were "only limited exceptions to the rule expressed by the [T]hirteenth [A]mendment," which the court explained as follows:

> One is when the state compels its citizens to perform civic duties such as military service or jury duty. ***Kozminski***, [487 U.S. at 943-944]. The second is in "exceptional cases" such as those granting parents certain powers over their children or laws preventing sailors from deserting. ***Id.*** [at 944]. The rule at issue here falls in neither of these categories.

***Brownson,*** 157 Wis. 2d at 413. Prough relies on this quoted language, arguing that the terrace ordinance does not fall under these exceptions. I am not persuaded. Requiring citizens to mow terraces adjacent to their property so as to prevent the growth of noxious weeds constitutes a "civic duty" as contemplated in ***Kozminski*** and ***Brownson***. *See also* ***Gasses v. City of Riverdale***, 701 S.E.2d 157, 160 (rejecting a Thirteenth Amendment challenge to an ordinance requiring the appellant to cut tall grass on portion of her property adjacent to a public right-of-way, noting ***Kozminski***'s civic duties exception and concluding, "A municipal ordinance requiring a citizen to maintain grass, weeds, and vegetation for the welfare of the community is not constitutionally prohibited involuntary servitude.").

¶22 Prough argues that terrace maintenance does not qualify under the civic duties exception because it was the Village's contractor that created an area of "uneven ground, low quality vegetation, and noxious weeds full of pollen." He argues that "[t]he Village tried to force Prough to not only maintain Village property, but to go above and beyond in mitigating a problem of the Village's own creation." These assertions find no support in the record. Instead, the record is clear that the Village required only that Prough mow the terrace, and only with

such frequency so as to prevent the weeds from growing to such an extent that they become noxious. As the circuit court stated:

> The issue isn't the fact that the weeds were there. The issue is that [Prough] didn't maintain and keep them at a level that … they wouldn't provide problems for the community. You've got an issue here where they grew to such an extent that they precluded people's visibility both for crossing the street and for driving on the street and seeing around the corner; they clearly created a problem. And even if he was having the dispute with the city about who planted those weeds and whether that was due to the remedial actions of the [V]illage after the construction was done, that's a separate issue from letting the weeds grow, flower, disperse, block people's view, block people walking down the sidewalk and everything else. That's his responsibility.

¶23 In sum, Prough has failed to show that the Village's terrace ordinance, as applied here, constituted involuntary servitude under the Thirteenth Amendment. Accordingly, Prough provides no basis to disturb the judgment finding him guilty of the noxious weeds ordinance or the dismissal of his Thirteenth Amendment counterclaim.

### III. WISCONSIN STAT. § 66.0113(1)(b)

¶24 Prough argues that the citation was "void" because it did not follow the requirements of WIS. STAT. § 66.0113(1)(b). Specifically, he states that the citation did not comply with § 66.0113(1)(b)2. or 5., which states that "[a]n ordinance … shall prescribe the form of the citation which shall provide … [t]he factual allegations describing the alleged violation" and "[a] designation of the offense in a manner that can be readily understood by a person making a reasonable effort to do so." *See also* VRO § 32-3 ("The form of the citation to be issued by Village police officers, the Dodge County Sheriff's Department or other designated Village officials … shall provide for the information required in

§ 66.0113(1)(b).”). Prough argues that because a section in the citation labelled "Violation Description" was left blank, the citation did not comply with these requirements from § 66.0113(1)(b). I reject this argument.

¶25 In addition to including Prough's name, address, and the date of the offense, the citation specifically describes the offense as "Public Nuisance – Noxious Weeds" and cites "RV334-3(F)" as the applicable ordinance. Prough fails to explain how this does not comply with the requirements that the citation include "[t]he factual allegations describing the alleged violation" and "[a] designation of the offense in a manner that can be readily understood by a person making a reasonable effort to do so." That the "Violation Description" section of the citation was left blank does not automatically equate to a failure to comply with these requirements. The "factual allegations describing the alleged violation" are "public nuisance – noxious weeds," and the "offense" is a violation of VRO § 334-3(F). Thus, Prough has failed to show that the citation does not comply with WIS. STAT. § 66.0113(1)(b).[5]

## IV. First Amendment

¶26 Prough argues that the circuit court erred in dismissing on summary judgment his counterclaim under 42 U.S.C. § 1983 alleging a violation of his First Amendment rights. He argues that the Village violated his First Amendment

---

[5] In his reply brief, Prough also suggests that the citation did not comply with WIS. STAT. § 66.0113(1)(b) because it did not cite the terrace ordinance, VRO § 399-38. I do not consider this argument because it is raised for the first time in the reply brief and is furthermore undeveloped. *See State v. Marquardt*, 2001 WI App 219, ¶39, 247 Wis. 2d 765, 635 N.W.2d 188 (this court does not consider arguments raised for the first time in reply brief); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court need not address undeveloped arguments).

rights by issuing the citation "in retaliation for his protected speech when he complained about the [Village's] substandard construction work." In support of his argument, Prough relies on Deputy Keberlein's incident report. The report states, consistent with the testimony at trial, that Keberlein contacted Prough and warned him that if he did not comply with his obligation to mow the terrace, Keberlein would issue him a citation, and that when Prough had not done so by the following day, Keberlein issued the citation. Prough relies on the following additional information from the incident report regarding a conversation between Keberlein and Village Trustee Kevin Hankes, that occurred the same day, and prior to, Keberlein's warning to Prough:

> Kevin Hankes advised me that he has received multiple complaints about the excessively long, noxious weeds in the terrace area that runs parallel to Jackson Street near the intersection of Jackson Street and Main Street. Kevin Hankes advised the property belongs to Frederick Prough. *Kevin Hankes also mentioned Frederick Prough is the same individual that appeared at a board meeting earlier in the year and expressed outrage over a recent village construction project that he claimed negatively affected him.*

(Emphasis added.) Based on this emphasized language in the incident report, Prough argues that "[i]t is clear that the Village took this adverse action against Prough based on the forbidden motive of retaliation," and he contends that the court therefore erred in dismissing on summary judgment his counterclaim alleging a violation of his First Amendment rights.

¶27 The parties are in agreement that the legal standards set forth in *Nieves v. Bartlett*, 587 U.S. 391 (2019) apply here. In *Nieves*, the United States Supreme Court articulated the law governing actions brought under 42 U.S.C. § 1983 for alleged violations of First Amendment protections. *Id.* at 396-409.

The Court noted that "'[a]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Id.* at 398 (quoted source omitted). Further, "[i]f an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quoted source omitted). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.* (quoted source omitted). Specifically, there "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (quoted source omitted).

¶28 Here, Prough alleges that he was issued a citation in retaliation for exercising his First Amendment rights, which appears to be a retaliatory prosecution claim. In the context of retaliatory prosecution claims, the Supreme Court has "adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge." *Id.* at 400. In other words, precedent "requires plaintiffs in retaliatory prosecution cases to show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." *Id.* at 400-01. Here, Prough has not alleged—either in the circuit court or on appeal—that there was not probable cause to issue a citation for noxious weeds. Indeed, the circuit court found Prough guilty of such at a bench trial. Because Prough alleges

15

retaliatory prosecution but concedes that there was probable cause, I reject his First Amendment argument on this basis under *Nieves*.[6]

¶29 Accordingly, because the undisputed facts establish that Prough's First Amendment counterclaim fails as a matter of law, the circuit court properly dismissed this counterclaim on summary judgment.

## CONCLUSION

¶30 For the reasons stated, I affirm the judgment finding Prough guilty of the ordinance violation and the dismissal of Prough's counterclaims.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] Prough appears to rely on an exception to the no-probable-cause requirement articulated in *Nieves v. Bartlett*, 587 U.S. 391 (2019), that applies to retaliatory *arrest* claims. The Court stated in *Nieves*, "[W]e conclude that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. However, because Prough does not argue that he was arrested, and the record does not show that he was, his argument fails under *Nieves* for this reason as well. In addition, Prough does not show that "similarly situated individuals not engaged in the same sort of protected speech" were not arrested, which is yet another reason the no-probable-cause exception in *Nieves* is inapplicable here.